## Maxson & Wolfenden's Appeal.

1. McIlvaine contracted to sell land to Green, who went into possession and mortgaged his interest; the mortgage was assigned to Lindsay, who issued a scire facias, pending which McIlvaine brought ejectment against him to enforce payment of the purchase-money and had an award in his favor to be released on payment in three weeks; within that time Lindsay asked to be allowed to defend, averring the award was for more than was due ; he also appealed; after the three weeks McIlvaine abated the excess and the court struck off the appeal, no order being made allowing more time. Green delivered possession to McIlvaine, who sold to Blaisdell.    Lindsay purchased Green's interest at sheriff's sale under his mortgage ; Blaisdell sold to Maxson, seven months after the award and five after the appeal was struck off; Lindsay tendered the amount of the award to Maxson and demanded a conveyance, which being refused he brought a bill for specific execution of McIlvaine's contract with Green.    *Held*, that Green's equitable interest was extinguished when the award became absolute, and Lindsay standing in his place could not compel a conveyance.

2. The only judicial decision as to the time of payment to prevent a forfeiture was that in the award.

3. The proper time to ask an extension of time for payment was when the appeal was struck off; but it seems that the court could afterwards have extended the payment not longer than three weeks from that time in accordance with the spirit of the award.

4. Whenever the time was not changed by the subsequent action of the court it was in full force.

5. McIlvaine holding the legal title was not bound to make the mortgagee a party ; he had a lien only on Green's equity.

6. Damon *v.* Bache, 5 P. F. Smith 67, followed.

January 22d 1874.    Before AGNEW, C. J., MERCUR and GORDON, JJ.    SHARSWOOD, J., at Nisi Prius.

Appeal from the Court of Common Pleas of *Delaware county :* In Equity : No. 225, to January Term 1874.

This was a bill in equity by Joseph Lindsay against John Maxson and Daniel Wolfenden, to enforce the specific execution of a contract for the sale of a factory and lot of ground in the city of Chester.

The contract was between Spencer McIlvaine and John J. Green.    The plaintiff claimed under a sheriff's sale of the equitable title of Green : the defendants claimed under a recovery by McIlvaine, the vendor, in an ejectment brought by him to enforce the payment of the purchase-money due on the original contract.

On the 2d of January 1865, Spencer McIlvaine entered into an agreement in writing to sell to John J. Green the factory and lot for $13,370.62, of which $1190.62 were paid down, and the remainder made payable in instalments within ten years.    Green went into possession under this contract.    On the 22d of September 1866, he executed a mortgage to Rhoads & Freeman of his interest in the lot and factory, and also of the machinery and fixtures in the factory to secure the payment of $15,000 with interest in four years ; this mortgage was assigned to Lindsay the plaintiff

May 16th 1867.    Afterwards John J. Green conveyed his interest in the contract to James C. Green.   On the 31st of October 1870, the plaintiff issued a scire facias on the mortgage against John J. Green, mortgagor, and James C. Green, terre-tenant; a defence was made by the defendants to the scire facias.

On the 21st of January 1871, McIlvaine brought an ejectment against James C. Green to enforce the payment of some of the instalments of the purchase-money which had become due; no defence was made, and on the 23d of February 1871, McIlvaine obtained an award of arbitrators, "to be released if the defendant pay to plaintiff $12,961.17 within three weeks of the date of the award, and in case of such payment the plaintiff shall make a full conveyance of the land in fee simple."

On the 13th of March, Lindsay the plaintiff petitioned the court averring the amount stated in the award was more than was due to McIlvaine and asking to be allowed to come in and defend in the ejectment.   The record did not show that any action was taken on this application.  On the 14th of March, Lindsay appealed from the award, and a rule was taken to strike off the appeal.   On the 20th of April, McIlvaine having agreed to reduce the amount named in the award of arbitrators by the sum of $887.51, the sum which Lindsay claimed was the excess, thus making the amount due on the contract $12,013.63, the rule was made absolute and the appeal stricken off.   Green then delivered possession to McIlvaine without an habere facias, who on the 21st of May conveyed the property to Blaisdell for $13,090.78; the amount of the award before it was abated with interest added.

On the 27th of July 1871, the plaintiff—having prosecuted the scire facias on his mortgage against Green with due diligence—recovered a judgment, issued a levari facias under which he purchased the factory and lot at sheriff's sale on the 24th of August 1871.

On the 14th of September 1871, Blaisdell conveyed the premises to the defendants, for the consideration of $22,500; this consideration was made up of the purchase-money paid to McIlvaine, a judgment held by Blaisdell against Green and some expenses which he had incurred.

On the 20th of September 1871, Lindsay tendered to the attorney of McIlvaine $12,073.60, with interest and costs, the sum to which the award had been reduced and demanded a conveyance; he continued ready and willing to pay the money, but the defendants had refused to receive it and convey.

These facts found by the master, A. Lewis Smith, Esq., are substantially those set out in the plaintiff's bill.

The defendants contended that Green's rights under the contract were extinguished by the judgment in the ejectment and the failure of either Lindsay or Green to pay the amount awarded within the

time limited by the award an indefeasible title in fee simple had vested in them.

The master, after an elaborate examination of the facts and the application of the law to them, reported in conclusion :—

* * * " A careful consideration of the case has led me to conclude, that in no event is Mr. Lindsay entitled to a decree for specific performance in this case, and I am clearly of the opinion that the bill should be dismissed.

" Lindsay has, in the master' s opinion, rights yet unbarred, rights under the judgment in the ejectment, but those rights cannot be asserted here, for reasons that seem too well settled in authority.

" It is conceded that the ejectment brought by McIlvaine against Green was one of the class known as ' equitable ejectments,' and was instituted to recover the amount of purchase-money remaining due on the contract of sale, or otherwise to rescind the contract. It will not indeed lie in the mouth of the plaintiff in this bill to say that such is not the case. For if the ejectment at any time involved other elements than this, they were eliminated at his instance, and the amount named in the award was upon his intervention shorn down to the exact balance of purchase-money due upon the articles of agreement, with interest. The enforcement of this contract is therefore *res adjudicata*, and cannot, upon well settled principles, be the subject of another action, whether legal or equitable. * * * Lewis, C. J., referring to this kind of ejectment, says, it is not any ordinary judgment at law. It is regarded as containing also the substance of a decree in equity for the payment of the money party and the conveyance of the land by another. It follows that the remedies of the parties respectively must be confined to proceedings founded on that judgment. If the defendant paid the money, according to the condition, it would be the duty of the court which rendered the judgment, to compel the conveyance of the land. If he failed to pay the money, the same court would grant leave to issue hab. fac. poss. to deliver possession of the land to the plaintiff. The mere circumstance that the condition of the award in the ejectment suit is an uncertain one, does not at all impair the quality of the award itself as an adjudication of the question involved in the present suit. * * *

" The only method in which Lindsay can escape from the effect of ejectment, is by showing that he was neither a party nor privy to it. After putting himself on the record as an appellant from the award in that very case, he would seem to be estopped from asserting that he was not a party ; but apart from that, and upon considerations hereinbefore stated, it has been seen that his rights as a privy can rest no higher than those of Green, under whom he claims, and with whom he must stand or fall with the exception that he is not to be prejudiced by any act of Green which can be construed to be in fraud of his rights as mortgagee, such as the

[Maxson's Appeal.]

premature delivery of his possessions to McIlvaine; and no such fraudulent act was shown to have been done up to the final judgment in the ejectment. If, therefore, Mr. Lindsay has any rights, arising out of the contract of sale, between McIlvaine and Green, not yet extinguished, his remedy for asserting them must be confined to proceedings founded on that judgment. And upon a proper showing to the court, in that case, that the time within which he was entitled to pay the amount named in the judgment of the court, was not specified, and was only limited to what was reasonable under the circumstances of the case, and that he is ready, or has offered to pay the amount within such reasonable time, or if it become important in the opinion of the court to show that he did in point of fact tender (as he alleges) the proper amount of the award to McIlvaine within the three weeks therein named, or at least, within three weeks after final judgment, and he can show it, it is not doubted that his claims will receive all the consideration to which they are entitled. And if he is entitled, upon yet paying the money, to a conveyance, it is certainly within the power of the court in that case to compel one.* * *

" The master therefore feels reluctantly compelled to report that the plaintiff's bill should be dismissed."

Exceptions were filed to the report; pending which the plaintiff asked leave to file an amended bill; leave was so granted and the amended bill was filed. It set out substantially as in the original bill, and further—

" 12. That at the time of the conveyance of Blaisdell to the defendants, he gave them a bond of indemnity against any defect in the title and against loss in expenditure for improvements, &c.

" 13. McIlvaine was aware of the mortgage held by Lindsay, before he commenced the action of ejectment. Blaisdell knew of it before he purchased from McIlvaine, and knew that process had been issued upon it, and Maxson & Wolfenden were aware when they purchased, that the estate and interest of Green had been sold by the sheriff under Lindsay's mortgage and purchased by him.

"14. Before the expiration of the three weeks named in the award in the case of McIlvaine v. Green, the plaintiff at several times offered to pay McIlvaine the proper amount of the award, and requested him to convey the legal title to the plaintiff. But McIlvaine refused to do so, stating that he could not convey the same to any one without John J. Green's consent, which would not be given to a conveyance to the plaintiff.

" 15. On the 20th of September 1871, the plaintiff tendered to the defendants the sum of $12,073.63, the amount of the reduced award in the ejectment, McIlvaine v. Green, with interest and costs of suit, and demanding a deed in fee simple of their legal

title in the premises; but the defendants refused to receive the same, or to convey the said title.

"16. The plaintiff has always been, and still is ready and hereby offers to pay to the defendants the said sum of $12,073.63, with interest and costs of their ejectment suit, and to receive a conveyance of the legal title to the premises in fee simple, as directed by the award of arbitrators in that case.

" No time having been fixed by the court for the payment of the said sum of $12,073.33, the amount to which the sum fixed by the arbitrators was reduced by McIlvaine, on the 20th of April 1871, and the said James C. Green and Joseph Lindsay, the mortgagee, and purchaser of his interest in the premises, being at liberty to pay the same, at a reasonable time thereafter, and the plaintiff having offered at various times to pay the said money to the said McIlvaine and to the defendants, within such reasonable time, and to receive a conveyance of the legal title to the premises in fee simple; and the defendants having refused so to convey, your orator prays that the defendants be decreed to convey to the plaintiff all their estate, right, title and interest in the said premises, upon his paying them the amount above named, $12,073.63, with the interest and costs as above stated, in pursuance of the judgment and decree of the said court, in the suit of McIlvaine *v.* Green, and that he may have such further relief as equity shall require."

The defendants in their answer said :—

"13. We do not know, and do not admit that Spencer McIlvaine knew of the mortgage held by Lindsay, before he commenced his ejectment suit, nor do we know or admit that Blaisdell knew of it before he purchased from McIlvaine; but we knew at the time we purchased the property, that the estate and interest of the Greens had been sold at sheriff's sale under Lindsay's mortgage, and purchased by him; but we had been notified and advised that all the rights, title and interest of both of the Greens in and to said premises had been extinguished prior to the last-mentioned sheriff's sale, and were informed and believed that at said sheriff's sale said Lindsay had been notified and warned that said premises were claimed by said Blaisdell in fee.

"14. We deny that before the expiration of the three weeks mentioned in the award, or at any other time prior to the 20th day of September 1871, said Joseph Lindsay, or any person for him, offered to pay said Spencer McIlvaine the proper amounts of the said award, or requested him to convey the legal title of said premises to said Lindsay, or that said McIlvaine refused to do so, stating that he could not convey the same away to any one without John J. Green's consent, which would not be given to a conveyance to the plaintiff; and we aver that the first and only tender made by him was at the date alleged by himself in his original

bill of complaint, to wit, on the 20th day of September 1871; and we further aver that said McIlvaine was at all times willing, 'prior to his said conveyance to Blaisdell, to take the proper amount due him, had it been tendered to him, and make a conveyance; and we are informed and believe that said Lindsay knew this."

They admitted the allegations in the 15th paragraph.

"16. We deny that the plaintiff has always been ready to pay the above amount, inasmuch as he never tendered or offered to pay the same, except upon the day and year last aforesaid, and has not yet brought the same into court, which, we are informed, he had the right, and it was his duty, to do within the time limited in said award; but we refused, upon the last-mentioned date, to receive said amount, and would not now receive the same, because we are advised that the said premises have vested in us in fee simple by an indefeasible title.

"We deny that the plaintiff was at liberty to pay the amount of the reduced award within a reasonble time, in manner and form as is alleged in his amended bill of complaint, or that he has ever so offered to pay it to any one; and we are advised, and do charge, that as the award of arbitrators was never modified in any particular, except by the reduction of the amount thereof, as above set forth; and inasmuch as the plaintiff never asked for an enlargement of the time for the payment of said amount, he was bound to pay the same within the time limited in said award.

"17. We aver that since we have come into possession of said premises, by virtue of said deed of conveyance from Blaisdell and wife, we have expended not less than $3000 on repairs and improvements of said factory and machinery, and have embarked a large amount of capital in a manufacturing business carried on therein; said business is now carried on by the defendant, John Maxson, alone, the said Daniel Wolfenden having, upon the 17th day of April 1872, sold out to him his interest in said business, and by deed of conveyance bearing date the same day, and recorded in said county, conveyed to him his interest in said factory and lot, with the machinery and appertenances, in fee simple."

The case under the amended bill and answer was referred to the same examiner and master; he reported: * * *

"The only addition to the evidence at the hearing under the present order, was the bond of indemnity given by Blaisdell to the defendants, when they took title. After the filing of the master's first report, Joseph Lindsay took a rule in the ejectment suit of McIlvaine v. Green, to show cause why the above-named defendants should not be ordered to convey the legal title to the premises in question to the said Lindsay, upon payment of the amount of the reduced award, with interest and costs of suit which is still pending, nothing having been done under it.

"It was contended by the defendant's counsel in bar of any

relief under the present bill, that it is open to the same ob-
jections which induced the master to report that the first bill
should be dismissed, viz. : that it is not an application in the action
of ejectment, but in reality an independent equitable proceed-
ing to attain the same end, and therefore obnoxious to the rules
of law, which forbid a second suit for a cause of action already
adjudicated.   The master, however, does not deem this a ques-
tion now before him, or open to discussion.   He is not called
upon to say, whether as counsel for the plaintiff, he would have
adopted the present method of accomplishing the plaintiff's object,
or whether he would have made his application in the case of
McIlvaine *v.* Green.   The plaintiff prepared an amended bill,
submitted it to the court and asked leave to file it.   The court in
granting him permission, said that he ' now unequivocally founds
himself upon the judgment in that case,' viz. : McIlvaine *v.* Green.
To adopt the defendant's views, therefore, upon this point, would
be to say that the court should not have allowed the amendment.
It now appears also from the opinion of the court upon allowing
the amended bill to be filed, that the appeal of Joseph Lindsay
in the case of McIvaine *v.* Green, was entertained by the court,
and would not have been dismissed, had not the defendant abated
the award.   It also appears as conclusively that when this was
done, no limitation of time within which to pay the balance due
and prevent the judgment from becoming absolute was asked for
or made ; the final judgment, therefore, was not entered in that
case until the appeal was thus disposed of, viz. : April 20th, 1871.
* * * The limit of three weeks named in the award, was out of
the case, because *it had already expired* at this date, and because
the plaintiff in the ejectment, by voluntarily abating the award,
after that time should not be esteemed to have gained an undue
advantage, and to have placed himself in the position he would have
been, if no appeal had been taken.   If he was after equity, he
should do equity, and it would be but little short of indirection
if by a device of that kind he would inflict a forfeiture upon the
plaintiff here. * * *

 " That a plaintiff's title becomes absolute on failure to pay the
unpaid purchase-money on or before the day stipulated in the
judgment is no longer open to question, but where no time has
been fixed, it is within the power of the court to ascertain it ;
and where it is fixed, the court may control and modify it up to
the time the failure becomes absolute, if it be necessary in order to
promote justice.   In the case of Creight *v.* Shatto, 9 W. & S. 82,
which was an equitable ejectment, Rogers, J. said, ' Time is of the
essence of the verdict and judgment, and becomes a material
point.   Care, however, should be taken to prevent oppression, and
against this the court will studiously guard.   But how will it be
in case a writ of error is taken within the period fixed for the pay-

[Maxson's Appeal.]

ment, and the time expires before it is disposed of by the Supreme Court, and the judgment should, unexpectedly to the defendant, be affirmed? Will the defendant be estopped from avoiding the forfeiture by payment of the money due? It is proper to say that in such a case the court can prevent injustice by giving further time for payment. As this is a case in equity, we can so modify the decree as to prevent the injustice which would arise from an absolute affirmance of the judgment.' Surely if the court will give time where the judgment is *affirmed*, they will do it where it is *reversed*, as was substantially the case with the award in McIlvaine *v.* Green. It is urged by the defendants that it was Joseph Lindsay's duty to have a new time fixed, if he did not want to abide by that fixed in the award; but in the opinion of the master, it was the duty of the plaintiff in the ejectment, who sought to enforce a forfeiture, to do everything necessary to make it complete. It was a matter within his province, as the actor in the case, and equity will not help him or shift his burdens, even if Lindsay's negligence had concurred with his own. At the former hearings in this case some testimony was taken to show that Lindsay did, within three weeks after the date of the award, offer to pay McIlvaine the correct amount due him, and that it was declined. Also, that the offer had been made on two occasions prior to the bringing of the ejectment suit. * * * Under the aspect which the case now presents, it is certainly unimportant to the plaintiff here to decide whether such offers were really made or not, except, perhaps, as tending to rebut the charge of laches against him. If made, they were all made *prior to the final judgment*." * * *

The master, after referring to the conflicting testimony on this subject, proceeded:—

"As the point was not pressed by the plaintiff at the present hearing, the master will not endeavor to reconcile the conflicting statements on the subject. The defendants contend, however, that even if no time were fixed for paying the amount of the judgment, Lindsay was guilty of laches in not making any offer to pay it until September 20th, five months afterwards. But in this connection, it will be recollected that at the date of the judgment, Lindsay was but a creditor of Green, and had not yet acquired title to the equitable estate of the latter under the contract with McIlvaine. It is true that a creditor may pay the amount to the vendor and save the forfeiture, but if he does he merely protects the defendant's title, and is not entitled to a conveyance from the vendor, unless he has purchased the equity of the vendee. Lindsay was pressing his suit on Green's mortgage with due diligence, and it was not until August 28th 1871, that he acquired the title to Green's interest by means of a sheriff's sale. The tender of the amount of the judgment in McIlvaine *v.* Green, with interest and costs, was made by Lindsay on September 20th 1871. The master

[Maxson's Appeal.]

is of the opinion that under the circumstances this was not too late, and that the court should yet compel a conveyance to him on payment of this amount. What would be supineness in one man may not be in another under different circumstances. Lindsay, it is true, was at liberty to pay this money at any time, but it was not his interest to do so until he could demand a conveyance to himself. To put himself in this position he was active in pushing his mortgage against Green, and within a reasonable time after the sheriff's deed, tendered the amount of McIlvaine's judgment. It was then positively declined. There is nothing in the case to lead to believe that if the tender had been made at any time after the appeal was dismissed in McIlvaine *v.* Green, it would have been accepted, but much to induce the contrary opinion; and as McIlvaine and those claiming under him had full knowledge of Lindsay's claim, no one is injured by the delay.  * * *

"The master therefore reports that the court should enter a decree in accordance with the prayer of the plaintiff's amended bill."

Exceptions were filed to this report.

In making the decree, the court (Butler P. J.) said:—

"Being informed that the parties desire the judgment of the Supreme Court, we will confirm the report of the master at once, that they may not be subject to the delay which would result from our retaining the case even for a few days."

The final decree was that:—

"The plaintiff shall pay to the defendants the sum of $12,073.63, being the amount to which the sum awarded by the arbitrators in the case of McIlvaine *v.* Green was reduced, with interest from February 23d 1871, the date of the award, until September 20th 1871, the date of the tender of the said money to the defendants ($416.52), making altogether the sum of $12,490.15, together with the costs of the case of McIlvaine *v.* Green. And thereupon the defendants shall convey to the plaintiff all their estate, &c., in the factory and lot of ground in Chester, which they purchased from Samuel Blaisdell, being the premises described in the bill, and deliver him possession thereof, the plaintiff having relinquished all claim to mesne profits of the premises up to the date of this decree."

The defendants appealed, and assigned for error the allowance of the amendment to the bill and the final decree.

*J. B. Hinkson* and *J. G. Brinkle*, for appellants.—The suit by McIlvaine against Green was an equitable ejectment and one verdict, or an award of arbitrators unappealed from, was final and conclusive: Damon *v.* Bache, 5 P. F. Smith 67; Amick *v.* Oyler, 1 Casey 506; Peterman *v.* Huling, 7 Id. 432; Hill *v.* Oliphant, 5 Wright 364.

Maxson had the right to take possession without a writ if the

[Maxson's Appeal.]

parties in possession did not object. It was not necessary for him to obtain a writ: Hewitt v. Huling, 1 Jones 35. Lindsay being a mortgage-creditor of Green was bound by the award: Damon v. Bache, 5 P. F. Smith 67. And to the same extent that Green was and should have protected himself by paying the money within the time named in the award to McIlvaine, it was his duty to have done so: Hill v. Oliphant, 5 Wright 377; Lauer v. Lee, 6 Wright 172; Pusey v. Harper, 3 Casey 470; Webster v. Webster, 3 P. F. Smith 164; Waters v. Waters, 8 Casey 308. Until the appeal was dismissed the case was in the power of the court as chancellor, and the running of the time was suspended and began to run again upon the dismissal of the appeal: Harmar v. Holton, 1 Casey 245.

*W. Darlington* and *W. L. Hirst*, for appellee.—The ejectment suit between McIlvaine and Green was a proceeding to which Lindsay was not a party. If Lindsay had paid the money to McIlvaine, he would only have protected Green's title: Pusey v. Harper, 3 Casey 470. He would not have been entitled to a conveyance from McIlvaine until he purchased Green's title: Watson v. Willard, 9 Barr 89. There are cases in which money was directed to be paid in a given time, and the title became absolute by reason of default. Here, however, no time was fixed by the court for the payment of the money. It must therefore be paid in a reasonable time, and the master has found that it was so tendered. The amount must be ascertained and stated on the record before the time begins to run: Harmar v. Holton, 1 Casey 245.

The opinion of the court was delivered, May 11th 1874, by

MERCUR, J.—This bill was filed by the claimant of an equitable title to compel the owner of the legal title to convey the land in controversy. The appellants hold the undoubted legal title. The appellee rests his equitable claim upon the following facts, to wit: McIlvaine, a former owner of the land, agreed in writing on the 2d day of January 1865, to sell and convey the same to one Green, in consideration of the sum of $13,370.62 to be paid therefor; $1190.62 thereof to be paid upon the execution of the agreement, and the residue in subsequent instalments. Upon the payment of the whole purchase-money, McIlvaine was to convey the land to Green, his heirs and assigns in fee. Green went into possession, and prior to the 22d September 1866, made the first payment. He failed to pay the other instalments as they became due. On the 21st day of January 1871, McIlvaine brought an action of ejectment, and on the 23d February 1871, obtained an award of arbitrators for the land, subject, in the language of the award, to this condition, "to be released if the defendant pay the plaintiff the sum of $12,961.17 within three weeks of the date of this

[Maxson's Appeal.]

award, and in case of such payment, the plaintiff shall make a full conveyance of the land in fee simple."

On the 14th of March 1871, the appellee, in his own name, appealed from the award thus obtained against Green. This appeal was stricken off on the 20th April 1871, upon McIlvaine filing a writing abating $887.17 from the amount awarded by the arbitrators. Thus leaving the amount of the award $12,073.60.

In the latter part of April 1871, Green gave possession of the premises to McIlvaine, who entered therein, without any writ of *habere facias possessionem* having been issued. On the 21st May 1871, McIlvaine sold and conveyed the premises to one Blaisdell, who on the 14th of September 1871, sold and conveyed the same to the appellants.

The appellee claims to hold all the equitable interest which Green acquired by virtue of his contract. On the 22d September 1866, Green executed a mortgage upon all his interest in the land to Rhodes & Freeman. The mortgage was duly recorded on the 25th of the same month. May 16th 1867, this mortgage was duly assigned to the appellee. He issued a sci. fa. thereon to November Term 1870, and on the 27th of July 1871, obtained a judgment. A levari facias issued thereon, under which the land was sold on the 24th August 1871, to the appellee, to whom the sheriff executed a deed therefor on the 28th of the same month. On the 20th September 1871, he tendered to the appellants the amount of the judgment which McIlvaine recovered against Green, with interest and costs, and demanded a conveyance of said premises in fee simple. The appellants declined to accept the money and refused to convey. On the 20th November 1871 the appellee filed this bill, praying that the appellants be decreed to convey the land to him upon his paying the amount of the judgment against Green with interest and costs. The case was referred to a master, who in February 1872 reported against the plaintiff in the bill; but afterwards by leave of the court, he filed an amended bill, upon which the master reported in favor of the decree prayed for. The court below confirmed the report and decreed a conveyance accordingly.

The appellee claims that the equities originally covered by the mortgage executed by Green, have been preserved and continued in him, from the fact that when the court dismissed his appeal, it omitted to designate any time for the payment of the money; and that he made the tender within a reasonable time after he received the sheriff's deed of the property.

The only judicial decision designating the time within which the purchase-money should be paid to prevent a forfeiture of all the equitable interest of the vendee, was the one made by the arbitrators. There was no averment of any collusion between McIlvaine and Green in the procurement of the award; so far as it

[Maxson's Appeal.]

appears this was the result only of Green's inability to pay and of McIlvaine's desire to collect the purchase-money or regain the land.

It is shown that the court expressed a purpose to allow the irregular appeal from the award to be so amended as to permit the appellee to defend in the name of Green; but upon McIlvaine proposing to abate the entire amount which was alleged to be excessive, and no further ground for an appeal being shown to the court, it was stricken off. If the appellee desired any extension of time for the payment of the sum awarded, thus corrected, then was the proper time to have asked for it. I do not mean to say that by the omission to apply on that day the appellee waived all right to invoke the equitable power of the court to designate some future day before which the judgment should not become absolute, yet I think the court would not have been justified in doing more than to enforce the spirit of the award as to the time of payment; and therefore should not have extended the time of payment for more than twenty-one days after the appeal was dismissed. The case is not analogous to a conditional verdict, in which the jury has omitted to fix a time of payment. Here the award did fix the time. Wherever it was not changed by the subsequent action of the court, it remained in full force.

In the absence of any fraud or collusion, I am unable to see how the appellee stood upon any higher ground than that occupied by Green. McIlvaine had parted with a limited interest in his land. Whether that interest was retained by Green unencumbered, or whether he gave a lien upon it, did not change McIlvaine's rights, nor his methods of enforcing them. The holder of the legal title was not required to make the mortgagees parties to the action of ejectment. They had a lien only on the equitable interest of Green. A mortgage like a judgment confers on the mortgagee nothing more than a lien upon the land: Asay v. Hoover, 5 Barr 35; Witmer's Appeal, 9 Wright 463.

When the award became absolute, and Green gave up the possession to McIlvaine, all Green's equitable interest terminated: Damon v. Bache, 5 P. F. Smith 67.

It is urged, however, that the appellee was not in a safe condition to pay the purchase-money, until he acquired the equitable interest at sheriff's sale. Conceding this to be so, it admits of a satisfactory answer.

To give full effect to this argument, would ignore the rights vested under the award, in the owner of the legal title, and might indefinitely postpone him in the collection of the purchase-money or the confirmation of his title. Neither the mortgagee nor a purchaser under the mortgage was under any obligation to pay it. In fact the appellee suffered more than twenty-one days to pass after receiving the sheriff's deed, before he made a tender of the

[Maxson's Appeal.]

purchase-money. In the meantime the appellants had expended upwards of $2000 in repairs upon the property. We think the appellee was not in a condition to compel a conveyance, and the bill should have been dismissed. This view of the case makes it unnecessary to discuss the errors assigned to permitting the bill to be amended. We will merely say, that under the rules, and especially under the 2d section of the Act of 29th March 1859, Purd. Dig. 601, pl. 71, we discover no fatal error in permitting the amended bill to be filed.

> Decree reversed, and now it is ordered and decreed that the bill be dismissed at the costs of the complainant and appellee.