Third National Bank & Trust Company of Scranton, Trustee, Appellant, *v.* Lehigh Valley Coal Company.

Argued September 28, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John Murphy,* with him *J. Julius Levy, Mackie, Murphy & Law* and *Bedford, Waller, Jones & Darling,* for appellant.

*Reese H. Harris,* with him *Herman J. Goldberg, Samuel W. Rhoads, C. P. O'Malley* and *O'Malley, Hill, Harris & Harris,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, November 26, 1945:

Did a lessor, by giving the lessee permission to mortgage the demised estate, waive the right reserved by it in the lease to repossess itself of the property upon a default by the lessee? That is the question involved in this case, and we answer it, as did the court below, in the negative.

In 1932 the Lehigh Valley Coal Company leased to the Wyoming Valley Collieries Company certain coal mines in Luzerne County known as the Forty Fort and Harry E. Collieries. The lease was for all the coal in,

under and upon the therein described tracts of land, together with the breakers, machinery, miners' houses, improvements, fixtures and personal property of every description upon the premises and connected with the mining, preparing and transporting of coal. The term was to continue until all the merchantable coal should be fully mined out and exhausted, provided that the lessee should so long keep and perform its covenants in the lease. The lessee was to pay a rent or royalty on all coal dug or carried away from the premises in the amount of fifty cents per ton for coal of the size known as barley or larger, and thirty cents per ton for smaller coal; after a total of 8,000,000 tons of the size of barley or larger should have been mined the royalty of fifty cents per ton was to be reduced to thirty-five cents. The lessee, at its own cost and expense, was to maintain all the properties in repair and to pay as additional rent all taxes thereon. If at any time an instalment of rent or any part thereof should become due and remain unpaid for a period of sixty days, the lessor was to have the right to declare the lease terminated; thereupon all rights of the lessee were to cease absolutely and the demised estate was to revert to the lessor which might then resume possession of the premises. In the event of a forfeiture of the lease by reason of a violation by the lessee of any of the prescribed covenants or conditions, the lessee was not to be entitled to remove any of the buildings, improvements, breakers, machinery or fixtures that might have been erected or installed by it, but all such improvements and fixtures were to be the absolute property of the lessor. The lessee was not to assign, mortgage or lien the demised estate without the written consent of the lessor first had and obtained, but a limited permission was given to the lessee to mortgage its interest under the lease to an amount not exceeding $250,000. This privilege was exercised by the Wyoming Company, and, when the mortgage which it then executed became

substantially reduced, an agreement was entered into by the parties, in 1936, in which, after again reciting that the lessee was not to assign, mortgage or lien the demised estate without the prior written consent of the lessor, it was provided that the lessee might "mortgage its interest under this lease to an amount not exceeding the sum of Five Hundred Thousand ($500,000.00) Dollars, inclusive of any amount outstanding under any prior mortgage, for a period not to exceed ten years from April 1, 1936; Provided, however, that nothing herein contained shall operate to impair, encumber, abridge or curtail in any way the rights, privileges or interests of the Lessor under this lease, or give to the mortgagee in said mortgage any lien or preference, or right of collection as to principal or interest which shall be prior to the right of the said Lessor to first receive the entire amount of the rentals or royalties agreed to be paid to it under the terms of this lease, and provided further, that the proceeds of any mortgage executed by Lessee under the power herein granted by Lessor shall be used by Lessee first for the payment in full of all indebtedness to Lessor under the terms of this lease up to and including April 1, 1936, and thereafter solely for the development of the premises herein demised and the marketing of the coal mined therefrom."

Pursuant to the right thus acquired by it the Wyoming Company thereupon executed and delivered to the Third National Bank and Trust Company of Scranton, as trustee for bondholders, a mortgage on the demised estate to secure an issue of $500,000 "First Mortgage * Leasehold Ten Year 5% Sinking Fund Bonds", which were sold to individual investors in the aggregate amount of $239,000. The mortgage recited that it was upon all the Wyoming Company's "estate, right, title and interest . . . in and to the land and lease of all the coal remaining in, under and upon" the described premises, and

---

* The original mortgage of $250,000 was satisfied of record.

in and to the lands, mines, properties, fixtures and structures used in connection with the operation of the mines. It contained a covenant that the Wyoming Company would not make any default whereby the lessor might have the right to terminate the lease.

During the course of the Wyoming Company's occupancy of the premises it constructed tunnels and installed some mining equipment designed for the more economical and efficient mining of the property. Its operations, however, were not successful, and in 1937 it defaulted in the payment of royalties; by October of that year it had been in arrears for more than sixty days in an amount, as it subsequently admitted in its bankruptcy proceedings, of approximately $160,000, together with some $22,000 of unpaid taxes. The Lehigh Company, having made repeated but futile demands for payment, entered judgment in an amicable action of ejectment as authorized by the lease, and, on October 25, 1937, by virtue of a writ of habere facias, received possession of the premises, including the coal, surface, breakers, improvements and personal property, from the sheriff. A month later the Wyoming Company filed a petition in the United States District Court for reorganization under the Bankruptcy Act. Plaintiff, as trustee under the mortgage, participated in those proceedings; it filed a claim on behalf of the bondholders for the principal and interest due on their bonds. It is of some significance to note, as reflecting its own viewpoint at that time, that, in answer to a petition of the Wyoming Company on a collateral matter, it admitted that the Wyoming Company had "for more than sixty days prior hereto, made, suffered and permitted various defaults whereby . . . the Lehigh Valley Coal Company has had and does have the right to terminate" the lease.

The Lehigh Company filed a petition in the bankruptcy proceedings for reclamation of the personal property and equipment claimed to belong to it by virtue of

the terms of the lease. Notices of the filing of this petition and of the hearing to be held thereon were duly given by the referee to all creditors of the Wyoming Company, including the plaintiff. Several hearings were had and testimony was taken, the final result of which was an order by the referee, from which no appeal has ever been taken, awarding to the Lehigh Company the larger part of what it claimed, consisting mostly of the property which had been on the premises at the time of the making of the lease and the renewals and replacements installed under the lessee's covenant to repair and maintain, and awarding to the bankrupt estate some items of equipment which had been added by the lessee; these were subsequently sold and the proceeds accounted for by the trustee in bankruptcy. It is the machinery, equipment and personal property thus awarded to the Lehigh Company by the United States Court which is the subject of plaintiff's present action for alleged unlawful conversion, its suit being to recover the sum of $239,000 and interest, representing the amount of outstanding bonds under the mortgage, claimed as damages because of the Lehigh Company's having taken possession of this property.

At no time, either before or after the Lehigh Company entered judgment in ejectment, did plaintiff tender to it the amount of the royalties and taxes due by lessee or any part thereof, nor in any manner offer to make good the lessee's default under the lease.

Plaintiff bases its case solely upon the proposition that when the Lehigh Company gave the Wyoming Company permission to mortgage the demised estate it thereby waived its right to declare a forfeiture for any subsequent breach by the lessee as well as its right thereupon to repossess itself of the premises, and especially without giving notice to plaintiff and opportunity to the bondholders to repair the breach and take over the property under their mortgage. That this proposition is

wholly untenable would seem so obvious as not to require any prolonged demonstration. All that the Wyoming Company had the right to do, and all that the lease gave it the power to do, was to mortgage its leasehold interest, and this in fact was all that it attempted to do, because the instrument which it executed purported to be a mortgage only of the right, title and interest which it had acquired under its lease. Certainly plaintiff, as mortgagee, obtained, and could obtain, no greater rights than were possessed by the lessee-mortgagor, and these were wholly subordinate to the rights reserved by the lessor and were subject to all the covenants and conditions of the lease, for, in words so clear as to dispel any possibility of doubt or misconstruction, the lease and the later agreement of 1936 both provided that, notwithstanding the grant of the permission to mortgage, nothing therein contained was to operate to "impair, encumber, abridge or curtail in any way the rights, privileges or interests of the lessor" under the lease. Of course, plaintiff, on behalf of the bondholders, had the right itself to pay the accrued royalties and taxes, and, by subrogation, seek recoupment from the lessee; while it did not receive any express notice from the lessor in regard to the default (a notice which the lessor was not legally obliged to give), it certainly knew enough of the situation, and had ample opportunity, to protect the bondholders in this manner had they desired that it should take such action. But was the lessor to be obliged to suffer the royalties and taxes to accrue indefinitely without either the Wyoming Company or plaintiff offering to remedy the default?

"When the plaintiffs acquired their mortgage on the leasehold interest of Selby, they did so charged with notice of the covenants of the lease and the provisions for forfeiture in case of the nonpayment of rent. . . . It was their duty, as much as that of Selby, to see that those covenants were complied with and that the lease be saved

from forfeiture": *Bowen v. Selby,* 106 Nebr. 166, 169, 183 N. W. 93, 94.

While the mortgage executed by the Wyoming Company was designated as a "first" mortgage this meant, and could have meant, nothing more than that it was a first lien on the leasehold estate, and so indeed it was entitled. True, the lease created, under well-established authorities, a sale of the coal in place with a provision for reverter in the event of default in the payment of the royalties agreed upon, but this fact in no wise changes the legal rights of the parties as to the situation here involved. If any citations are needed to support the principle that all interests created in a defeasible estate by the owner thereof are subject to the defeasibility which existed as to the estate of the transferor, reference may be made to Rest. Property, §50, and to such illustrative cases as *First National Bank of New Brockton v. McIntosh,* 201 Ala. 649, 79 So. 121; *Moss v. Chappell,* 126 Ga. 196, 54 S. E. 968; *Abrahams v. Tappe and Fry,* 60 Md. 317; *Michigan Trust Company v. Grand Rapids Hotel Company,* 265 Mich. 328, 251 N. W. 414; *Minneapolis Threshing Machine Co. v. Hanson,* 101 Minn. 260, 112 N. W. 217; *Bowen v. Selby,* supra; *Couch v. Scandinavian-American Bank,* 103 Ore. 48, 197 P. 284. See also *Maxson & Wolfenden's Appeal,* 75 Pa. 176, 187.

In the event of a forfeiture by reason of a violation by the lessee of any of its covenants, all the improvements and fixtures that might have been erected by it were, according to the terms of the lease, to be the absolute property of the lessor. Such a provision is valid and enforceable. Whatever may be the common law in reference to alterations and improvements made upon the demised estate, the agreement of the parties on that subject became the law which they themselves fixed and which determines their rights; consequently no question of trade fixtures or of similar considerations enters into this case: *Isman v. Hanscom,* 217 Pa. 133, 66 A. 329;

*McClintock & Irvine Co. v. Aetna Explosives Co.,* 260 Pa. 191, 103 A. 622. Nor, under such circumstances, does any question of "unjust enrichment" arise, for that principle of quasi-contract is not applicable to agreements deliberately entered into by the parties however harsh the provisions of such contracts may seem in the light of subsequent happenings. As a matter of fact there was no "unjust enrichment" in the present instance because the losses sustained by the Lehigh Company by reason of its not receiving the royalties to which it was entitled, of its being kept out of possession during the pendency of the bankruptcy proceedings, and of its being compelled to incur considerable expense for pumping and other maintenance charges in preserving the property during that period, more than counter-balanced any gain it may have acquired through the acquisition of additions or improvements which the lessee made upon the demised premises during the period of its occupancy.

Plaintiff places much emphasis upon the alleged fact that part of the royalties under the lease were to be considered as payments on account of the purchase of the breakers, machinery, improvements, fixtures and personal property, appraised at the time of the making of the lease at approximately $935,000. While the lease itself called for a flat royalty of fifty cents per ton on all coal mined of barley or larger size, plaintiff asserts it was understood that of that royalty fifteen cents per ton was to be applied to the purchase of such equipment and property until 8,000,000 tons of coal had been mined, whereupon the royalty was to be reduced to thirty-five cents per ton and the purchase was to be considered as completed. Assuming, as the court below found, that there was such an agreement, it established at best a right which the lessee would have, upon mining 8,000,000 tons of barley coal, to acquire title to the property in question, the total purchase price of which was thus fixed at $1,200,000. It certainly was not contemplated or agreed, however, that in the event of its failure to

mine the stipulated tonnage the lessee was to acquire a pro tanto title proportioned to the number of tons it mined. By reason of its own default its operations were discontinued after less than half of the required tonnage had been mined, and it thereby lost any right, title or interest which it might have obtained had it performed its obligations and worked out the full purchase price in accordance with the alleged agreement.

The court below rejected the Lehigh Company's contention that its title to the property now claimed by plaintiff to have been unlawfully converted was adjudicated and confirmed in the bankruptcy proceedings initiated by the lessee. Much might be said in support of its position that the granting of its reclamation petition constituted a final determination of its right to the property which it took into its possession. Plaintiff was notified of the filing of that petition and of the hearings had thereon, and, apart from the representation of its interests in reference thereto by the trustee in bankruptcy, it itself had the right and opportunity to defend against the Lehigh Company's claim, the allowance of which it is now seeking collaterally to attack and as to which it is here asking, in effect, to have a re-adjudication. However, in view of our disposal of the case on the other grounds herein indicated, it is not necessary to discuss this phase of the situation.

The court below, trying the case by agreement without a jury, properly directed the entry of judgment for the defendant.

Judgment affirmed.