**In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.**

**TRANSICOIL, INC. and Eagle–Picher Industries, Inc., Plaintiffs,**

v.

**BLUE DOVE DEVELOPMENT ASSOCIATES, LIMITED PARTNERSHIP, and K–Jem, Inc., General Partner, Defendants.**

Bankruptcy No. 1–90–00100.
Adv. No. 93–1067.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Dec. 21, 1995.

As Amended Feb. 2, 1996.

See also, 190 B.R. 564.

Ronald Bluestein, Philadelphia, PA, for Blue Dove Development Associates, Limited Partnership.

P. Stephen Lerario, Philadelphia, PA, for K–Jem, Inc.

Edmund J. Adams, Cincinnati, OH, for Eagle–Picher Industries, Inc., Transicoil, Inc.

### DECISION and ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

BURTON PERLMAN, Bankruptcy Judge.

This adversary proceeding arises in the consolidated Chapter 11 cases identified in the caption. Plaintiff Transicoil, Inc. is a wholly-owned subsidiary of plaintiff Eagle–Picher Industries, Inc. ("EPI"). Transicoil occupies a plant (the "premises") at Valley Forge, Pennsylvania, under lease from defen-

dant Blue Dove Development Associates ("Blue Dove"). (Blue Dove is a limited partnership in which defendant K–Jem is the general partner.) The complaint asserts claims to reform the lease agreement between the parties, to recover damages, to impose a constructive trust, and to obtain the turnover of property alleged to be that of the estate. Now before the court are cross-motions for summary judgment by the parties which were submitted for decision following argument to the court.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O).

Plaintiffs filed a motion for summary judgment. In it, they seek relief on Counts III, IV, and V of the complaint. (Plaintiffs separately filed a motion for summary judgment on the counterclaim of defendants. This will be the subject of a separate decision.) Defendants responded to plaintiffs' motions and filed a cross-motion with regard to Counts I–V, VII, and IX of the complaint. Because of the way this matter has developed, however, we need only describe Counts III, IV, and V.

Count III of the complaint seeks damages on grounds that the Advance Rent which Transicoil was obliged to pay pursuant to the lease as security was excessive as a result of defendants' alleged breach of contract for failure to obtain permanent financing. Count IV seeks damages for alleged unjust enrichment because of Blue Dove's refusal to adjust the Base Rent despite the fact that the financing costs of Blue Dove were lower than was contemplated by the parties at the time of contracting. Count V seeks damages for alleged unjust enrichment, in this instance by reason of alleged excessive payments of Advance Rent, plaintiffs contending that proper Advance Rent was supposed to be keyed to the obtaining of permanent financing.

It is fair to say that Counts III, IV and V of the complaint, as well as those counts which have now been abandoned by plaintiffs, have in common that they seek various relief on account of the failure by defendants to obtain permanent financing by the time of occupancy of the premises by Transicoil. Plaintiffs says that permanent financing would have led to a firm basis for the payment of rent, and because permanent financing was not obtained by the time of occupancy substantial windfalls accrued to Blue Dove.

The answer by defendants is essentially a denial of the allegations of the complaint. Coupled with the answer, is a counterclaim. The basis of the counterclaim is alleged breach of the lease agreement for failure to make certain monthly rent payments, failure to pay monthly rent at the rate calculated by Transicoil after it obtained permanent financing, and because all rent due under the lease is accelerated because of the breach.

Plaintiffs have moved for summary judgment on Count III, damages for failing to secure permanent financing as a result of which Advance Rent was improperly calculated; Count IV, unjust enrichment, which seeks damages for overpayment of Base Rent because they do not reflect the lower financing costs of Blue Dove than were contemplated at the time of contracting; and Count V, unjust enrichment because of overpayment of Base Rent and Advance Rent. Defendants have filed a cross-motion for summary judgment.[1]

F.R.Civ.P. 56 governs summary judgment. Rule 56(b) provides in part that: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In the present instance, plaintiffs have presented no affidavits, depositions, answers to interrogatories, or admissions, to support their motion. Plaintiffs say in their reply memorandum (p. 7), that extrinsic evidence (apparently other than the lease) is not necessary to resolve the present dispute. While plaintiffs have so

---

1. While in their cross-motion, defendants address most of the Counts of the complaint, we discuss only Counts III, IV and V because the others have been abandoned by plaintiffs.

stated, both parties in their presentations have referred to facts which appear to be undisputed and are essential in order that we give due consideration to the contentions of the parties. This observation does not extend to facts at or about the time of the execution of the lease for, to the extent that reference is made by one or the other party to such facts, they are not undisputed. For present purposes we look only to the lease itself supplemented by undisputed facts regarding events at times subsequent to execution of the lease to determine the intention of the parties in entering into it. We consider the lease itself to be before us because both parties have made it of record.

There is no disagreement about events subsequent to the entering into of the lease. The lease was signed April 28, 1989. The building was completed and Transicoil took possession September 1, 1990. The lease contemplated that at some point Blue Dove would secure permanent financing, but this had not been accomplished by the time Transicoil took possession. Instead, Blue Dove secured continued financing under the construction loan. Blue Dove determined a temporary Base Rent using a mortgage constant derived from a pending permanent mortgage loan application. Prior to entering into possession, Transicoil was informed that such interim Base Rent was to be $990,839.96 per annum payable in equal monthly installments of $82,569.96. Transicoil made payments in that monthly amount until September, 1992. Plaintiffs' bankruptcy case was filed in January, 1991. Transicoil assumed the lease September 6, 1991. Blue Dove's arrangement with its construction lender was on a basis of a variable interest rate, Blue Dove's interest obligation fluctuating with interest rates. Though Transicoil, through the two-year period ending September, 1992, continued to make fixed monthly payments of $82,569.96, Blue Dove's monthly payments were steadily declining because interest rates were declining.

Transicoil lodged a protest with Blue Dove, asserting that the situation was inequitable, and that the monthly payments by Transicoil should reflect the actual financing costs to Blue Dove. The parties reached an accommodation on or about October 1, 1992, with Blue Dove agreeing to reduce the Base Rent to $75,000.00 per month. From September, 1992 through September, 1993, due to difficulties experienced by Blue Dove's construction lender which led to its being taken over by the Resolution Trust Corporation, Blue Dove made no payment on account of financing of its construction loan. Through this time, Transicoil was paying Blue Dove $75,-000.00 per month. Blue Dove finally secured a permanent loan September 7, 1993. Applying the lease provision for calculating Base Rent utilizing the interest rate of the permanent financing, the annual Base Rent is $921,459.80, which comes to $76,782.22 per month.

The motion of plaintiffs brings into play the following provisions of the Lease:

2.01(a) Based on the cost of the Work being $5,464,800.00 (as set forth in Section 1.03) and there being no changes in the other assumed factors referred to in Section 2.05, the parties agree that the basic annual rental (the "Base Rent") for the period from the first day the Tenant shall be obligated to pay Base Rent on account of the initial term until the expiration of the sixtieth (60th) full calendar month in the term, shall be $838,200.00 SUBJECT, IN ALL EVENTS, TO ADJUSTMENT in accordance with the provisions of Section 2.05. If all of the calculations required to adjust the Base Rent, in accordance with Section 2.05, shall not have been completed by Landlord prior to the date Tenant is first obligated to pay Base Rent, Tenant shall pay to Landlord the installments of Base Rent, determined by Landlord as the appropriate amount, and set fourth (sic) in a letter from Landlord to Tenant. At such time as the Base Rent is definitively calculated by Landlord, Landlord shall deliver to Tenant a statement setting forth the Base Rent, together with a reasonably detailed explanation of the adjustments. If such statement shall indicate that Tenant shall have paid a sum in excess of the amount Tenant would have otherwise been required to pay had the Base Rent been definitively determined on the first day Tenant was obligated to pay Base Rent, Landlord shall pay such excess to Tenant

within ten (10) days after Landlord's definitive determination of Base Rent. If such statement shall indicate that there is a deficiency in the sum Tenant has paid on account of Base Rent and the amount Tenant would have been obligated to pay had the Base Rent been definitively determined on the first day Tenant was obligated to pay Base Rent, Tenant shall pay such deficiency, as additional rent, within ten (10) days after receipt of such statement. The Base Rent shall be in addition to all other payments to be made by Tenant pursuant to this Lease and shall be paid in monthly installments of one twelfth (1/12th) of such Base Rent on the first (1st) day of each calendar month during the term of this Lease, all in advance, and without demand, deduction or set-off, and a pro rata portion of such monthly Base Rent (based on a per diem basis) shall be paid at the beginning and end of the term, if the commencement date is or the Lease terminates on other than the first day of a calendar month. All payments shall be paid to Landlord, at Landlord's address set forth on the first page of this lease or such other location as Landlord shall from time to time designate.

\*    \*    \*    \*    \*    \*

2.05 The Projected annual Base Rent for the initial sixty (60) full calendar months of the term of $838,200.00, shall be subject to the following adjustments:

\*    \*    \*    \*    \*    \*

(c) Notwithstanding the adjustments in connection with the provisions of section 2.05(a) or 2.05(b), in no event shall these adjustments, in the aggregate, result in an annual Base Rent of less than $800,000.00.

(d) If the constant of Landlord's permanent mortgage in connection with the Work shall be other than 10.753%, the annual Base Rent shall be increased, in the event such constant shall be greater than 10.753%, by the annual amount of principal and interest which Landlord is obligated to pay annually as a result of the increase in such constant. In the event such constant shall be less than 10.753%, the annual Base Rent shall be

decreased by the annual amount of principal and interest which Landlord in (sic) no longer obligated to pay as a result of such decrease in such constant.

\*    \*    \*    \*    \*    \*

29.02 Tenant shall pay to Landlord, as advance rent, to be applied by Landlord as a credit against the monthly installments of Base Rent falling due during the last year of the initial term of this Lease, as specifically set forth in Section 29.06(a)(iii), a sum determined and paid, as follows:

(a)(i) No later than ten (10) days prior to the date Landlord intends to close on Landlord's construction loan to finance the construction of the Work (as such date shall be determined by written notice from Landlord to Tenant given not less than twenty (20) days prior to such date), Tenant shall deposit with the Landlord a sum equal to the aggregate of six (6) monthly installments of Base Rent, as then reasonably determined by Landlord ("the initial advance rent installment"). Within ten (10) days after the date the Base Rent is definitively calculated, as set forth in Section 2.01(a), the parties shall adjust this sum so that the principal sum of the initial advance rent installment shall equal the aggregate of six (6) monthly installments of Base Rent, as so definitively calculated.

(ii) On or before the commencement date of the initial term of this Lease and thereafter on or before each of the next thirty-five (35) monthly anniversaries of such date, Tenant shall deposit with Landlord a sum equal to 1/36 of the aggregate of six (6) monthly installments of Base Rent, as then determined by the provisions of Section 2.01(a) (the "second initial advance rent installment"). If the Base Rent shall not have then been definitively determined, within ten (10) days after the date the Base Rent shall be definitively determined, the parties shall adjust this sum so that the principal sum of the second advance rent installment shall equal the aggregate of

six (6) monthly installments of Base Rent, as so definitively calculated.

\* \* \* \* \* \*

30.05 Notwithstanding the execution and delivery of this Lease, it is specifically agreed that Landlord shall have the right, but not the obligation, to terminate this Lease and all of the rights and obligations of the parties hereunder, if by August 31, 1989 Landlord shall have been unable to obtain a commitment for both a non-recourse construction loan and a non-recourse permanent loan in connection with the construction and permanent financing of the Building and other items of Work, on terms and conditions acceptable to Landlord, in Landlord's sole discretion. Landlord shall exercise the foregoing right by giving Tenant written notice of such election to terminate within ten (10) business days after August 31, 1989. If Landlord shall give such notice, this Lease shall thereupon be null and void without the necessity of any further documentation and neither party shall have any rights, liabilities or obligations hereunder or as a result of such termination.

\* \* \* \* \* \*

Plaintiffs move for summary judgment with respect to Counts III, IV and V of the complaint. We will discuss these matters separately.

■ 1. Count III. Breach of Contract. To support its motion for summary judgment in this respect, plaintiffs must persuade us that the contract has been breached by defendants. Central to plaintiffs' position in this respect is their assertion that it was the intention of the parties in entering into the lease "that base rent would be charged at all times in an amount calculated by reference to Blue Dove's actual financing costs." (Plaintiffs' Memorandum in Chief p. 12.) That is, plaintiffs contend that by not adjusting base rent to Blue Dove's actual financing costs, Blue Dove breached the lease.

We hold that plaintiffs' position in this respect is incorrect.

Indeed, the terms of the lease itself are inconsistent with the notion that Base Rent would be keyed to defendants' actual costs. The lease terms at § 2.05 (see above p. 7) rather provide that Base Rent for the first 60 months shall be $838,200.00 subject to adjustment on account of several factors, but in no case to be no less than $800,000.00 per year. This provision is entirely at odds with the notion that rent is to be keyed to lessor's financing costs.

While there may be no issue of fact in the record before us as to the lease agreement, the foregoing statements require that we hold that plaintiffs are not entitled to judgment as a matter of law on Count III. Plaintiffs' motion for summary judgment on Count III is denied.

While we so hold, we suggest that the parties note our comments in the discussion below on the cross-motions of defendants regarding interpreting Count III of the complaint.

■ 2. Counts IV and V. Unjust Enrichment. The assertion of plaintiffs of entitlement to summary judgment on these counts is based upon the same premises advanced by plaintiffs in support of their motion for summary judgment for breach of contract. That is, they assert that the parties in entering into the lease intended that Base Rent be keyed to actual financing costs. The argument is then projected from that premise, that because actual rent paid was more than defendants would be entitled to if rent were determined in accordance with actual financing costs, defendants have been unjustly enriched.

The argument is fundamentally flawed for two reasons. First, as we have already indicated, we do not accept the premise that it was the intent of the parties that rent be keyed to actual financing costs, and consequently there is no basis upon which the court can reach the conclusion that there has been unjust enrichment. Second, there is an express contract between the parties, and where this is the case there is no room for the equitable remedy of unjust enrichment. *See* 66 Am.Jur.2d, Restitution and Implied Contracts, § 6. Necessity that there be no express contract. *See also Third National Bank & Trust Co. v. Lehigh Valley Coal Co.,* 353 Pa. 185, 193, 44 A.2d 571, 574 (1945);

Cambria Savings & Loan Association v. Estate of Gross, 294 Pa.Super. 351, 359, 439 A.2d 1236, 1240 (1982); Benefit Trust Life Insurance Company v. Union National Bank of Pittsburgh, 776 F.2d 1174, 1177 (3rd Cir.1985).

Accordingly, the motion of plaintiffs for summary judgment on Counts IV and V is overruled.

### Cross–Motion for Summary Judgment by Defendants

■ In their cross-motion, defendants seek summary judgment on Counts I–V, VII and IX of the complaint. Plaintiffs have indicated that they withdraw the counts of the complaint other than Counts III, IV and V. Consequently, we construe the motion of defendants as being directed only at Counts III, IV and V.

In support of their cross-motion, defendants have furnished an extended affidavit by Ronald Bluestein which relates numerous efforts to secure permanent financing, as well as attesting to the difficulty in getting permanent financing because of debtor's bankruptcy. In addition, an affidavit by Gary L. Wilson, a mortgage banker, is presented in which Wilson attests to efforts to secure permanent financing. Finally, defendants present the affidavit of Stephen H. Frishberg, an attorney and CPA, who supports the correctness of the calculation of Interim Base Rent. While plaintiffs presented no evidentiary materials with their motion in chief, with their reply they offer portions of certain depositions which attack the credibility of the Bluestein affidavit, depositions of Bluestein taken in certain Pennsylvania state court proceedings where principals of defendant K–Jem were litigating between themselves.

Defendants argue that they are entitled to summary judgment, first, because the lease must be enforced in accordance with its plain meaning. Defendants assert that there is no ambiguity in the lease, and the lease expressly provides for the eventuality that permanent financing not be obtained by the date that Transicoil took possession of the premises, that it follows that there was no time requirement for securing permanent financing and the lease dictated all that was required of the lessor until permanent financing was obtained. Defendants say that they have done all that the lease requires of them, and they are therefore entitled to a summary judgment of dismissal of Counts III, IV and V of the complaint.

We find defendants' position to be based on an incorrect interpretation of the lease and conclude that the motion cannot be granted. Defendants' interpretation of the lease is erroneous because it is based upon an assumption that because the lease provided no specific date by which permanent financing had to be obtained by the lessor, lessor's only obligation under the contract was to comply with the provision regarding interim rent. We hold that that was not the extent of lessor's obligation. The facts of the case bring two principles of contract law into play which the parties have not recognized.

■ First, the fact is perfectly clear, from the language of the lease, that it was contemplated by the parties that Blue Dove would obtain permanent financing at some point. There is omitted from the contract, however, a specified date by which that was to occur. That brings into play the first legal principle to which we have alluded. It is a principle of Pennsylvania law that where time of performance of a contract obligation is not specified, the court will provide a reasonable time. Potter v. Leitenberger Machine Company, 166 Pa.Super 31, 34, 70 A.2d 390, 392 (1950); Field v. Golden Triangle Broadcasting, 451 Pa. 410, 418, 305 A.2d 689, 693 (1973).

■ The same fact element, omission of a specified date by which permanent financing was to be obtained, requires application also of a second legal principle. This principle is that good faith is an implied provision of every contract. This also is a principle of Pennsylvania law. Liazis v. Kosta, Inc., 421 Pa.Super. 502, 510, 618 A.2d 450, 454 (1992); Seal v. Riverside Federal Savings Bank, 825 F.Supp. 686, 698 (E.D.Pa.1993).

In implementation, these two principles really turn out to amount to the same thing. This is so because where a time provision is omitted from a contract, the court will remedy the deficiency by providing a reasonable time. The requirement of good faith in the

present instance requires that permanent financing be pursued with diligence, and if this is done, this may well determine what is a reasonable time. Before Counts III, IV, and V of the Complaint can be adjudicated, a determination of a reasonable time to obtain permanent financing must be litigated. There is thus a genuine issue of material fact on this issue which precludes the granting of summary judgment to defendants. There is, as well, another issue of fact which requires adjudication. Plaintiffs have, by offering contradictory evidence to the Bluestein affidavit, put Bluestein's credibility in issue. This also must be evaluated in an evidentiary hearing.

Because we find there to be genuine issues of material fact, we hold that defendants are not entitled to summary judgment on Counts III, IV and V.

The cross-motions of the parties for summary judgment as to Counts III, IV and V of the complaint are denied.

So Ordered.