**KEYES FIBRE COMPANY**

v.

**C. J. MERRILL, INCORPORATED et al.**

Supreme Judicial Court of Maine.

Nov. 20, 1972.

88

Pierce, Atwood, Scribner, Allen & Mc-Kusick by Daniel E. Boxer, Portland, for plaintiff.

Drummond & Drummond by David N. Fisher, Jr., William B. Mahoney, Merton G. Henry, John J. Flaherty, Portland, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE and ARCHIBALD, JJ.

ARCHIBALD, Justice.

This case is before us on appeal from a decision of a single Justice ordering the plaintiff to pay to the Maine National Bank (Bank) interest on $239,450.77 at Six Percent (6%) per annum for the period from October 30, 1967, to August 25, 1969. The order appealed from is the sequel to the decision in Farnum v. C. J. Merrill, Inc., 264 A.2d 150 (Me.1970), which held that the Bank had a security interest in the proceeds only of a sale by C. J. Merrill, Inc., (Merrill) of a dryer to Keyes Fibre Company (Keyes). The case was remanded to the Superior Court for consideration of interest charges.

The preliminary facts giving rise to the issue before us were stated in *Farnum*.

To those basic facts there need be added that Keyes on October 30, 1967, commenced a "complaint for interpleader and declaratory relief" against the Bank, Merrill, and the Receiver of Merrill. When the complaint was filed, Keyes did not deposit with the Court funds representing the consideration for the sale of the dryer, deferring doing so until August 25, 1969, at which time the funds were so deposited, under stipulated conditions, and simultaneously transferred to the Bank under an appropriate Court order.[1]

*Farnum* was decided April 8, 1970, and, on May 28, 1971, the parties filed a factual stipulation, historically descriptive of the relationship of all parties between January 14, 1966 (the date of the contract of sale), and August 25, 1969. The ultimate issue is stated in this language:

"Whether or not Keyes is liable to Bank for interest at the legal rate of 6% per annum on the purchase price of $239,450.77 during the period October 30, 1967 to August 25, 1969, or any part of such period . . . ."

The Justice who heard the case ruled that interest was due from Keyes to the Bank during the period stipulated.

Keyes premises its attack on this ruling on a basic proposition, namely, that the adoption of M.R.C.P., Rule 22, "sweeps away all of the old learning" regarding actions of interpleader. It argues that, unlike pre-rule interpleader actions, the failure to pay the interpleaded funds into court when the action is commenced no longer mandates the assessment of interest for this failure.

Rule 22, modeled after Fed.R.Civ.P. 22(1), is in this language:

"Persons having claims against the plaintiff may be joined as defendants

[1]. "It is hereby Ordered, Adjudged and Decreed that all right, title and interest of the Receiver or Maine National Bank in and to said dryer and/or the proceeds thereof on the date hereof be and hereby are transferred to said sum of $239,450.77 deposited with said Maine National Bank in accordance with and subject to all of the terms and provisions in said Stipulation."

and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20."

Keyes seeks support in a statement in Field, McKusick and Wroth, Maine Civil Practice, Reporter's Notes at 382:

"The rule permits a defendant exposed to multiple liability to admit liability, pay the money into court, and be dismissed from the case. But payment into court is not required."

■ We note that although payment of the funds into court is not required in order to interplead adverse claimants to a fund (whether on the direct action of a plaintiff, or on the counterclaim or cross-claim of a defendant), the rule is silent as to the results which may flow from the failure to do so in terms of the ultimate assessment of interest on the amount involved in the interpleader action.

■■ It is true that Rule 22 is an expansion of the pre-rule limitation of an interpleader action. *See* First National Bank of Portland v. Reynolds, 127 Me. 340, 143 A. 266 (1928). It was the general rule that the stakeholder of interpleaded funds avoided liability for interest thereon from the date the same were deposited in court. Winterton v. VanZandt, 397 S.W. 2d 693 (Kansas City, Mo.App.1965); *see also* 15 A.L.R.2d 477. The fundamental question which we must decide is whether the promulgation of Rule 22, by enlarging

the scope of interpleader actions, has also abrogated the rule concerning the payment of interest when funds are not deposited in court. Our conclusion is that the use of the interpleader action authorized by Rule 22 will not necessarily relieve the non-depositing interpleading party from the obligation to pay interest.

Powers v. Metropolitan Life Ins. Co., 142 U.S.App.D.C. 95, 439 F.2d 605, 608–609 (1971), interpreting Fed.R.Civ.P. 22, stated the rule in this language:

"Generally where . . . there is a real dispute between claimants, and the [interpleader] is a mere stakeholder, interest is not allowed on the fund in question for the period during which it is on deposit in the registry of the court. . . . And a stakeholder should be allowed without application of interest a reasonable time to determine whether there are adverse claims of substance and to prosecute any appropriate interpleader action in view of such determination. . . . Yet unreasonable delay or failure on the part of a stakeholder in depositing the funds in court may subject it to liability for interest on the funds. . . .

. . . . . .

. . . [W]e are of the opinion that in actions of interpleader . . . where demand by one claimant cannot be met without prejudicing the claim of another and thereby possibly subjecting the company to double liability, the result may be different depending upon circumstances.

. . . . . .

We believe that in interpleader actions interest need not be automatically allowed, but that its award should depend upon equitable considerations. . . . "

In allowing interest where the funds in a bank account were being claimed by conflicting interests, the Ninth Circuit stated:

"In order to protect itself, [defendant bank] could have *interpleaded* the ad-

verse claimants by way of a cross complaint or a counterclaim, Rule 22, Federal Rules of Civil Procedure, under the equitable doctrine of interpleader. . . . Such action, *accompanied by a deposit into the court* would have discharged [defendant bank] from all liability and *would have stopped the running of interest. . . . "* (Emphasis added.)

Bank of China v. Wells Fargo Bank & Union Trust Co., 209 F.2d 467, 474 (9th Cir. 1953). *See also* United States v. McDonald Grain and Seed Company, 135 F.Supp. 854 (8th Cir. 1955).

On the facts before us Keyes, at its request, received delivery of the dryer some eleven months prior to the date on which payment therefor became due. It knew then that the Bank had loaned Merrill the money required to construct the dryer and that, ultimately, the Bank would be entitled to payment of the loan out of the sale price. Within a month prior to the due date, both the Bank and the Receiver made demands upon Keyes for the full amount of the purchase price, which demands precipitated this action. The essence of the relief claimed in the interpleader action is found in the prayer therein:

"5. That each of the Defendants be required to interplead and settle between themselves their rights to the foregoing amounts, and that Plaintiff be discharged from all liability in the premises except to the person or persons whom this Honorable Court shall adjudge to be entitled to the same.

6. That this Honorable Court adjudge and decree that the said Steam Heated Dryer, and all of its appurtenances are free and clear of any lien, encumbrances or any other security interest in favor of the Defendants or any of them."

Keyes has argued that because it had a contractual right to the equipment free and clear of any lien, encumbrance or security interest, it was under no obligation to de-posit the money until there had been an adjudication that such was the case. It further argues that because *Farnum* had not been decided on August 25, 1969, when the money was paid to the Bank under the stipulated circumstances, its liability for the purchase price had not been finally established. It concludes that the award of interest by the Justice below was error. We do not agree.

We reach this conclusion by applying equitable considerations to the facts disclosed by the record. We note that Keyes has never denied its obligation to pay for the dryer. It makes no claim of defective materials, poor workmanship, or other breach of contract. The essence of the complaint by Keyes is that it wants protection against the possibility of double liability. For example, if Keyes had responded to the Receiver's demand for payment, it might be subject to double liability for either of two reasons, namely: The Court might ultimately hold that the Bank had a security interest in the steam dryer, or the holding might be that the Bank's security interest was limited to the purchase price. Conversely, if Keyes paid the Bank as demanded, the ultimate holding might have been that the Bank had neither a security interest in the dryer or in the proceeds. The clear purpose of the interpleader action was to protect Keyes from these uncertain results and not to avoid the ultimate payment of the purchase price.

It is apparent that Keyes had the use of the dryer and the use of the money simultaneously. We conceive the ultimate position of Keyes, despite the rather complex financial arrangement involved, to be little more than that of a stakeholder, and we can conceive of no possible prejudice that could have resulted had Keyes paid the money into Court when it commenced the present action.

■ Recognizing that a stakeholder is entitled to a reasonable time in which to investigate the status of competing claims and that interest will not be assessed as a

penalty for the retention of funds during such time, we next must determine whether there is a valid reason for deferring the assessment of interest beyond October 30, 1967.

 When the interpleader action was commenced, Keyes had as complete knowledge of the underlying bases for the competing claims for the right to payment as it did on August 25, 1969, when the fund was finally paid into Court. Keyes had already been in possession of a dryer, for which it had not paid, for the period of eleven months. During the period prior to October 30, 1967, Keyes had made no contention that there was any reason to relieve it from its ultimate obligation to comply with the contract of sale. It is likewise clear that Keyes did not contend during the ensuing twenty-two months that payment would not be made to either the Bank or the Receiver. During this period there ensued an extensive debate between the parties, the issue being not whether Keyes would be ultimately obligated to pay for the dryer, but whether payment should be legally made to the Bank or the Receiver. During this controversy Keyes consistently described itself as a "stakeholder."

It is clear to us that the issue of interest for the intervening period (October 30, 1967, to August 25, 1969) would have been obviated had Keyes paid the fund into Court promptly. Keyes knew, or should have known, that payment for the dryer to either the Bank or the Receiver was inevitable. The equitable power of the Court to protect the fund from the dual claims, both claimants being before the Court, cannot be doubted. The Bank and the Receiver could have litigated their differences as well with the fund in Court as in the Keyes treasury. Keyes had the use of both the dryer and the money during this period. We can conceive of no valid reason for not paying the fund into Court on October 30, 1967.

"As a general rule . . . a stakeholder has an affirmative duty promptly to dispose of money by any available judicial method, and will be held liable for interest while having beneficial use of the money."

United States v. McDonald Grain and Seed Company, *supra* at 858–859.

 We hold that Rule 22 cannot be used to justify the failure of a debtor to discharge a debt when it ought to be paid. Such a failure subjects the debtor to an award of "compensation in damages, equal to the value of the money, which is the legal interest upon it." Inhabitants of Norridgewock v. Inhabitants of Hebron, 152 Me. 280, 128 A.2d 215 (1957).

The entry is:

Appeal denied.

POMEROY and WERNICK, JJ., did not sit.

All Justices concurring.