[No. 2256–3.   Division Three.   July 27, 1978.]

Kelley D. Messinger, *Appellant,* v. New York Life Insurance Company, *Respondent,* Gary Wayne Messinger, et al, *Appellants.*

*Freise & Lohrmann* and *Herbert H. Freise,* for appellants.

*Phelps R. Gose,* for respondent.

GREEN, J.—Donald Schacht, as guardian ad litem for Gary and Donald Messinger, appeals from a trial court order denying his motion for summary judgment and dismissing the complaint against New York Life Insurance Company for additional interest on the proceeds of an insurance policy covering the life of his wards' mother, Pamela.

The appeal presents the following questions for our review: (1) Did New York Life have a duty to interplead the beneficiaries of the insurance policy? and (2) If New York Life did have a duty to interplead, when did that duty arise? Our answers to these questions determine whether the company is liable to the beneficiaries for additional interest.

The facts are undisputed. In November 1969, Kelley and Pamela Messinger, husband and wife, purchased a $10,000 life insurance policy from New York Life Insurance Co. on the life of Pamela. The policy contained a provision for double indemnity in the event of Pamela's accidental death. Kelley was the primary beneficiary under the policy. The Messingers' children were the secondary beneficiaries, and Donald Messinger, Kelley's father, was tertiary beneficiary.

On August 7, 1970, Pamela died. Kelley gave New York Life notice of her death and made a timely demand on the company for payment of the policy proceeds, but it refused to pay. Thereafter, on December 11, 1970, Kelley was arrested and charged with the first–degree murder of his wife. A jury convicted him on this charge on December 19, 1971, and the Court of Appeals affirmed this conviction on April 24, 1973. *State v. Messinger*, 8 Wn. App. 829, 509 P.2d 382 (1973). On August 28, 1973, the Supreme Court denied Kelley's petition for review at 82 Wn.2d 1010.

Shortly after his arrest, Kelley commenced this action against New York Life by serving upon the company a complaint in which he claimed the proceeds of the policy. He did not file this complaint until April 23, 1975, and on that same day, pursuant to Kelley's petition, the court appointed Donald Schacht as the guardian ad litem for his two minor children. On May 2, 1975, New York Life filed its answer and cross claim by which it sought to interplead the beneficiaries of the policy. As an affirmative defense to payment to Kelley, the company pleaded Washington's slayer statute, RCW 11.84.100.[1] The policy proceeds were deposited with the court, together with $2,100.12 which represented interest in the amount of 5 1/2 percent for the 2–year period immediately following Pamela's death.[2] The company paid this interest pursuant to the following provision contained in the policy:

> *Interest on Single Sum Death Benefit.* Interest at the rate (not less than 3% per annum) declared by the Company will be included in death benefit proceeds which are

---

[1] RCW 11.84.100 reads:

"(1) Insurance proceeds payable to the slayer as the beneficiary . . . of any policy . . . of insurance on the life of the decedent, . . . shall be paid instead to the estate of the decedent, unless the policy . . . designates some person other than the slayer or his estate as secondary beneficiary to him and in which case such proceeds shall be paid to such secondary beneficiary in accordance with the applicable terms of the policy."

[2] In July 1975, the sum of $22,100.12 was paid to the children's guardian, on the understanding that this distribution would not prejudice the children's right to litigate whether the company owed the beneficiaries additional interest.

paid in a single sum. Such interest will be for the period from the date of the Insured's death to the date the proceeds are paid, but not for a period of more than two years.

The trial court applied this provision and limited interest to the 2–year period.

On appeal, the guardian ad litem contends that New York Life owes additional interest from the end of the 2–year period following Pamela's death to the date it deposited the insurance proceeds in court, a span of about 2 years, 9 months. On the other hand, New York Life contends that the contract limits its liability for interest to the 2 years immediately following the insured's death. In the circumstances of this case, we must disagree with New York Life's contention. Where an insurance company is fully aware that payment of the policy proceeds to the primary beneficiary may be blocked by the slayer statute, it cannot retain those proceeds beyond a reasonable time without incurring liability for interest. To hold otherwise would result in the unjust enrichment of the insurer at the expense of the beneficiaries.

Other jurisdictions have recognized that if an insurer admits liability on the policy, it should be required to interplead conflicting claimants promptly or be subject to interest on the amount of the proceeds. *See, e.g., Equitable Life Assurance Soc'y of the United States v. Miller,* 229 F. Supp. 1018, 1021 (D. Minn. 1964); *Powers v. Metropolitan Life Ins. Co.,* 439 F.2d 605, 608 (D.C. Cir. 1971); *Keyes Fibre Co. v. C.J. Merrill, Inc.,* 297 A.2d 87 (Me. 1972); and Annot., 15 A.L.R.2d 473, 477–79 (1951). Whether a delay in interpleading the claimants is reasonable depends upon the circumstances of each case. *Powers v. Metropolitan Life Ins. Co., supra* at 608.

Although the contracts in the cited cases did not contain interest limitation clauses comparable to the one in the present case, we do not find this distinction material. The limitation clause in the New York Life policy does not specifically relieve the company of its obligation to interplead.

Such a clause might be contrary to the public policy which favors prompt payment of insurance claims.[3] Here, New York Life received timely notice of the loss, but refused payment because it suspected that the claimant, Kelley, had murdered the insured. The company never claimed that it was not liable on the policy, only that Kelley was disqualified as a beneficiary due to the slayer statute. When New York Life first denied payment to Kelley in 1970, it thereby created a claim in the children who were secondary beneficiaries.

New York Life contends that no claim on behalf of the children arose until the court appointed a guardian ad litem for them in April 1975. We disagree. RCW 11.84-.100(1) requires an insurance company to pay the proceeds to the secondary beneficiary when the primary beneficiary is a slayer within the definition of that word set forth in RCW 11.84.010(1).[4] New York Life's act of denying payment to Kelley without also denying liability on the policy, coupled with the rights conferred on the secondary beneficiary by RCW 11.84.100(1), created a claim in the children sufficient to support interpleader proceedings. New York Life was aware of this claim at least as early as December 1970. Thereafter, it had a duty to interplead the conflicting claimants and deposit the policy proceeds into the registry of the court within a reasonable time or be liable for addi-

---

[3] In *Modern Brotherhood of America Lodge v. Bailey*, 50 Okla. 54, 150 P. 673, 676 (1915), the court held that a clause denying a claimant *any* interest when he brought an action to enforce collection of insurance proceeds was against public policy. The court reasoned that the clause enabled the insurance company to wrongfully withhold payment of the proceeds for an indefinite period without any loss to itself. Similarly, a clause limiting interest in the face of a clear duty to interplead would enable an insurer to avoid its duty without incurring damages. The clause here does not purport to limit interest in these circumstances. Its purpose is to protect the insurer should the identity of the claimants be unknown.

[4] RCW 11.84.010 reads: "As used in this chapter:

"(1) 'Slayer' shall mean any person who participates, either as a principal or an accessory before the fact, in the wilful and unlawful killing of any other person."

tional interest. Since the guardian ad litem's claim for additional interest is for the period following the expiration of the 2 years, such interpleader action should have been commenced no later than August 1972.[5]

New York Life further argues that until Kelley withdrew his claim it could not pay the secondary beneficiaries without risking double liability. RCW 11.84.110[6] protects the company if it makes payment to the slayer before it has notice that the payee willfully and unlawfully killed the insured, but there is no similar protection provided in the case where the insurance company makes payment to the secondary beneficiary and the primary beneficiary later proves that his act did not fall within the statutory definition of "slayer." It is sufficient answer to say that the company could have avoided this risk by pursuing its remedy in interpleader. *John Hancock Mut. Life Ins. Co. v. Doran,* 138 F. Supp. 47, 49–50 (S.D.N.Y. 1956).

Consequently, we hold that New York Life is liable for additional interest from August 7, 1972, 2 years after the insured's death, to May 8, 1975, the date the company deposited the proceeds in court. Since the claim here was for a liquidated amount, the interest rate is the statutory rate of 6 percent per annum. RCW 19.52.010. *Gheen v. Construction Equip. Co.,* 49 Wn.2d 140, 143–44, 298 P.2d 852 (1956); *United States v. Hoffman Constr. Co.,* 163 F. Supp. 296 (E.D. Wash. 1958).

Reversed.

MUNSON, C.J., concurs.

---

[5]This would have given the conflicting claimants an opportunity to request the court to allow the deposit to be placed in an approved savings account where it would draw interest. This is what occurred immediately after New York Life deposited the proceeds with the court in May 1975.

[6]RCW 11.84.110 states:

"Any insurance company making payment according to the terms of its policy . . . shall not be subjected to additional liability by the terms of this chapter if such payment or performance is made without written notice . . . of the killing by a slayer."

ROE, J. (concurring in part; dissenting in part)—The defendant New York Life Insurance Company entered into a contract of insurance insuring the life of Pamela Messinger, which contract provided in part:

> *Interest on Single Sum Death Benefit.* Interest at the rate (not less than 3% per annum) declared by the Company will be included in death benefit proceeds which are paid in a single sum. Such interest will be for the period from the date of the Insured's death to the date the proceeds are paid, but not for a period of more than two years.

The terms of that paragraph excused the company from the payment of interest after a 2–year period. The majority, without declaring such clause void as contrary to public policy, has avoided its plain meaning and effectively written it out of the contract. The delay in payment beyond the 2–year period was not the fault of the insurance company but occurred because the primary beneficiary attempted to accelerate his receipt of the proceeds by killing the insured. Naturally, the company refused to pay until that issue was settled, which took from August 7, 1970, until August 28, 1973, when the Supreme Court denied Kelley's petition for review, a period of 3 years and 21 days. During that time, there were no conflicting claims to the proceeds. In fact, for some reason which does not appear from the record, the children, through a guardian ad litem, did not sign a complaint until an additional year and a half had elapsed, April 23, 1975.

The majority holds that the insurance company had a duty to interplead the beneficiaries of the policy and to deposit the proceeds in court, and since it failed to do so, interest accrued in effect, from the date of death. Because there were no conflicting claimants, I do not believe an interpleader action was mandated. No one else claimed the proceeds. Insurance companies should not be required to commence an interpleader action every time there is a death at the risk of having to pay interest. Such would also force the beneficiaries to take appropriate legal proceedings

to recover the proceeds from the clerk of the court. The majority quotes *Powers v. Metropolitan Life Ins. Co.,* 439 F.2d 605, 608 (D.C. Cir. 1971), that "Whether a delay in interpleading the claimants is reasonable depends upon the circumstances of each case." Yet it does not find any reason for the delay in this case and ignores the very authority cited. CR 22 provides that persons having claims may be required to interplead. The children did not claim the proceeds, even though they had a right to do so, until long after the time their father was found to be the slayer.

In my view, the time after the 2–year period and until August 28, 1973, when the primary beneficiary was finally adjudged disqualified, was a reasonable period of time for the insurance company to hold the proceeds. After that time it then knew that the children would take and it had a duty to pay them or interplead. Thus, I would disallow interest for that period of 1 year and 21 days.

Reconsideration denied August 29, 1978.

Appealed to Supreme Court October 10, 1978.