776 F.2d 1174
 BENEFIT TRUST LIFE INSURANCE COMPANY
v.
UNION NATIONAL BANK OF PITTSBURGH, Administrator
d.b.n.c.t.a. of the Estate of Michael F. DeJohn,
Dawn DeJohn, and Jeffrey E. Ingram,
guardian of the Estate of
Michelle DeJohn, a minor.
Appeal of BENEFIT TRUST LIFE INSURANCE COMPANY.
Appeal of UNION NATIONAL BANK OF PITTSBURGH, Administrator
of the Estate of Michael F. DeJohn.
Appeal of Dawn DEJOHN and Jeffrey E. Ingram, Guardian of the
Estate of Michelle DeJohn, a minor.
 Nos. 84-3780, 84-3801 and 84-3812.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 2, 1985.
Decided Nov. 15, 1985.
 
 John P. Davis, III (argued), Jones, Gregg, Creehan & Gerace, Pittsburgh, Pa., for Benefit Trust Life Ins. Co.
 Michael W. Davis (argued), Columbia, Md., for Dawn DeJohn and Jeffrey Ingram.
 Ronald W. Crouch (argued), Lawrence J. Kuremsky, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for Union Nat. Bank of Pittsburgh.
 Before HUNTER, WEIS, and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 A murder prosecution against the primary beneficiary lasting for a number of years delayed the determination of the proper payees of life insurance proceeds. The district court decided that in the interim the insurance company was required to interplead and pay the proceeds into court. Having failed to do so, the company became liable for interest at the rate it had realized, one which was in excess of the legal rate. We conclude that there is no duty of interpleader in Pennsylvania and that the carrier is responsible for prejudgment interest, but only at the legal rate. Accordingly, we will remand for modification of the judgments.
 
 
 2
 This case arises out of claims for the proceeds of life insurance policies covering Michael DeJohn, who was killed on February 12, 1976. At the time of his death, he was insured by plaintiff Benefit Trust Life Insurance Company under two group policies purchased by his employer. One was a standard life policy, and the other covered accidental death. Each had a face amount of one and one-half times DeJohn's annual earnings, which resulted in the sum of $62,000 on each policy. The central issue in this case is the amount of prejudgment interest, if any, due on the proceeds of the two policies.
 
 
 3
 The primary beneficiary on each of the policies was the insured's wife, Jill DeJohn. The contingent beneficiaries on the life policy were his two minor children, Dawn and Michelle. The contingent beneficiary on the accident policy was the insured's estate.
 
 
 4
 Michael DeJohn died as a result of a gunshot wound, and, within a few days after his death, the police arrested his wife, Jill. She was indicted for murder soon thereafter. The criminal proceedings dragged on for many years. After two trials and an appeal to the state supreme court, Mrs. DeJohn finally confessed, on April 30, 1982, to the murder of her husband.
 
 
 5
 On May 6, 1976, Benefit Trust had received a claim by Jill DeJohn for the proceeds of the two policies. The company knew that Mrs. DeJohn had been indicted and was also aware that the Pennsylvania Slayers' Act, 20 Pa.Cons.Stat.Ann. Secs. 8801-8815 (1975), would bar payment to her if she were guilty of causing her husband's death.
 
 
 6
 In March, 1976, a guardian had been appointed for the estates of the two children. Mrs. DeJohn, having initially taken out letters on her husband's estate, resigned, and the Union National Bank was appointed administrator. In a letter to the insurance company dated August 23, 1976, the bank stated,
 
 
 7
 "As administrator ... the Bank has opened two separate accounts. The first account will hold the assets which are properly payable to the Estate.... The second ... has been established to hold funds which would otherwise be payable to Mrs. DeJohn and/or the two minor children. It is our intention to hold these funds pending the outcome of Mrs. DeJohn's trial.... [I]t is very important that some sort of financial assistance be forthcoming for the support of the two minor children."
 
 
 8
 In 1976, the insurance company stated it would not pay the benefits until the resolution of the criminal matter. It did, however, offer to make a partial payment to the estate or to the guardians on behalf of the children if a hold harmless agreement was signed by the parties in interest, including Jill DeJohn.
 
 
 9
 In November of that year, after reviewing the company's terms, the bank stated that,
 
 
 10
 "[I]t has been decided not to seek payment on this policy until the final outcome of the legal proceedings against the primary beneficiary, Mrs. DeJohn.... [D]ue to several complications which have developed, we do not feel that much advantage will be derived in seeking payment before the actual beneficiary has been determined."
 
 
 11
 From 1976 through 1982, regular correspondence passed between Union National Bank and the insurance company. The guardian for the children did not contact the insurance carrier until Jill DeJohn had confessed.
 
 
 12
 During the first two years, the insurance company made periodic requests about the status of the criminal case. In a letter of November 27, 1978, the attorney for the insured's estate advised the company that the state supreme court had heard arguments in Mrs. DeJohn's appeal. He continued,
 
 
 13
 "We will advise you of that outcome as soon as it becomes available so that prompt payment in full of benefits owing plus all earned interest may be effected to the appropriate party."
 
 
 14
 The status reports continued over two more years. In a letter of February 17, 1981, the bank wrote that a retrial was to be scheduled but that Mrs. DeJohn's attorney could not give a specific date. The letter concluded, "I believe all we can do at this point is to maintain the status quo."
 
 
 15
 On May 10, 1982, the bank wrote to the insurance company informing it of Mrs. DeJohn's confession and adding, "There appears to be various financial difficulties, primarily tax problems with the Estate of Michael F. DeJohn. Therefore, we are requesting that payment to contingent beneficiaries not be made until these problems are resolved." Two months later, the bank requested payment of the proceeds of the accident policy, together with "the appropriate pro rata portion of the accrued interest."
 
 
 16
 In October, 1982, an attorney representing the two children requested payment on the life policy. The insurance company paid the amounts it contended were due under the policies, but in each instance denied interest.
 
 
 17
 The insurance company then filed this declaratory judgment action, asking the court to determine that no beneficiary was entitled to interest. The beneficiaries counterclaimed, alleging that the insurance carrier had improperly computed the principal and asking for interest at a rate equivalent to that paid during the relevant period on six months' certificates of deposit.
 
 
 18
 After a bench trial, the district court found that the beneficiaries were entitled to the increased principal because the company had not included commissions earned by the decedent as part of his annual earnings. Seemingly, the insurance company had accepted the calculation by Mrs. DeJohn, whose claim asked for $38,000, and did not verify the actual earnings with the employer. That part of the adjudication has not been appealed.
 
 
 19
 The district court also determined that after May 6, 1976, when Mrs. DeJohn submitted her claim, the insurance company had a duty to interplead the proceeds of the two policies. Having failed to do so, the carrier had been unjustly enriched and owed interest, not at the legal rate of 6%, but at a higher rate approximating the net investment income the company received during those years. The district court entered judgment requiring the insurance company to pay the sum of $70,029.98 to Union National Bank, as administrator of the Estate of Michael DeJohn, and $35,014.96 to Dawn DeJohn, and the same sum to Jeffrey Ingram, guardian of the Estate of Michelle DeJohn.
 
 
 20
 The insurance company has appealed, contending that it did not have a duty to interplead and that if any interest is due it must be calculated at the legal rate. The carrier also argues that no interest is due on the additional amount attributable to the commissions because that matter had not been raised until the beneficiaries filed their counterclaim. The beneficiaries have cross-appealed, arguing that interest should have been calculated at the certificate of deposit rate.
 
 
 21
 We begin by noting that in this diversity case the law of Pennsylvania applies. The Supreme Court of Pennsylvania has concluded that "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract." Schott v. Westinghouse Electric Corp., 436 Pa. 279, 290, 259 A.2d 443, 448 (1969).
 
 
 22
 The Superior Court followed this holding in Gee v. Eberle, 279 Pa.Super. 101, 119, 420 A.2d 1050, 1060 (1980): "the essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties." If there is a relationship in the form of a promise to, or for the benefit of, the plaintiff, he "has a right to recover on the promise.... The existence of that right, however, precludes a claim of unjust enrichment." See also Third National Bank & Trust Co. of Scranton v. Lehigh Valley Coal Co., 353 Pa. 185, 44 A.2d 571 (1945); Roman Mosaic & Tile Co., Inc. v. Vollrath, 226 Pa.Super. 215, 313 A.2d 305 (1973).
 
 
 23
 Plaintiffs in this case have a direct contractual relationship with the insurance company. They are the third party beneficiaries of the policies which establish the carrier's obligation to pay. The beneficiaries have an undoubted right in law to sue for and receive those proceeds. Therefore, under Pennsylvania law no basis exists for an action of unjust enrichment in these circumstances.
 
 
 24
 Nor do we find any basis in Pennsylvania law for imposing a duty on a life insurance company to file an interpleader action. Although it is free to do so under both federal and state rules, and may well find interpleader advantageous, access to that opportunity does not impose a duty. That the procedure is available does not make its use mandatory.
 
 
 25
 As a general rule, a life insurance company has no fiduciary obligation to the beneficiary; their relationship is solely a matter of contract. It is worth noting here that just as the insurance company had the option of filing an interpleader action, so did the beneficiaries have the opportunity to bring suit based on contract.
 
 
 26
 The only Pennsylvania case cited to us which imposed a duty to interplead was a decision of the Court of Common Pleas of Allegheny County, In re: Estate of Bixby, 132 Pitt.Legal J. 188 (Allegheny Co. 1983). We find that case neither controlling nor persuasive. It relied on two cases from other states and did not recognize either the Pennsylvania restrictions on actions for unjust enrichment or the contractual remedies available to beneficiaries.
 
 
 27
 We conclude, therefore, that the district court erred both in imposing an obligation on the part of the insurance company to interplead, and in assessing, for failure to follow that procedure, prejudgment interest at the company's rate of return. That determination does not end this case, however; we still must decide whether interest at the legal rate is properly payable on the proceeds.
 
 
 28
 The Pennsylvania Supreme Court has relied on the Restatement of Contracts as a guide for the award of interest in contract cases. The court cited Sec. 337(a) for the proposition that when a defendant breaches a contract to pay a definite sum of money, interest is payable "from the time performance was due." Penneys v. Pennsylvania Railroad Co., 408 Pa. 276, 279, 183 A.2d 544, 546 (1962).
 
 
 29
 In Daset Mining Corp. v. Industrial Fuels Corp., 326 Pa.Super. 14, 473 A.2d 584 (1984), the Superior Court quoted from the same provision of the Restatement of Contracts (Second), now renumbered Sec. 354. That section provides,
 
 
 30
 "If the breach consists of a failure to pay a definite sum of money ... interest is recoverable from the time for performance of the amount due."
 
 
 31
 In reasserting that principle, the court said,
 
 
 32
 "In contract cases, prejudgment interest is awardable as of right.... In claims that arise out of a contractual right, interest has been allowed at the legal rate from the date the payment was wrongfully withheld, where the damages are liquidated and certain, and the interest is readily ascertainable through computation."
 
 
 33
 Id. at 35, 473 A.2d at 595.
 
 
 34
 Daset rejected a contention that the withholding of payment by a debtor amounts to "unjust enrichment" when market interest rates exceed the legal rate. Because that disparity is the result of a statutory limitation, "reform in this matter is the province of the legislature." Id. at 39, 473 A.2d at 597. The court also recognized that the rule differs in claims of restitution, where determination of the rate of interest is within the discretion of the chancellor. See Peterson v. Crown Financial Corp., 661 F.2d 287 (3d Cir.1981). See also Sack v. Feinman, 489 Pa. 152, 413 A.2d 1059 (1980).
 
 
 35
 In Palmgreen v. Palmer's Garage, Inc., 383 Pa. 105, 117 A.2d 721 (1955), the court held that in all cases of contract, interest is allowable at the legal rate from the time payment is withheld after it has become the duty of the debtor to make such payment. Assessment of such interest does not depend upon discretion but is a legal right "which arises upon breach or discontinuance of the contract provided the damages are then ascertainable by computation and even though a bona fide dispute exists as to the amount of the indebtedness." Id. at 108, 117 A.2d at 722. Under the Restatement view and that of the more recent Pennsylvania cases, the award of interest in contract disputes is not based on punitive considerations but on compensation for the loss of use of the money.
 
 
 36
 In Penneys v. Pennsylvania Railroad, Co., 408 Pa. 276, 279, 183 A.2d 544, 546 (1962), noted above, the court sustained an award of interest on an unliquidated contractual claim, commenting that the plaintiff's demand was not "so exorbitant as to excuse performance" by the defendant. Thus, it appears that in some circumstances the payment of interest will not be required. The court, however, did approve the award of interest that had accrued during an unexplained seven year delay in adjudication by the trial judge. The court noted that even though requiring the payment of interest for a period when the litigants had no control over the case might seem unreasonable, depriving the plaintiff of the use of the money seemed equally unreasonable. Because the court could not "determine that either party caused the delay and since appellant had use of the money ... throughout the course of the litigation," an award of interest to the plaintiff was affirmed. Id. at 280-81, 183 A.2d at 546.
 
 
 37
 The subject of prejudgment interest as it applies to the proceeds of life insurance policies has not been extensively litigated in the Pennsylvania appellate courts. However, we find a series of fire insurance cases helpful.
 
 
 38
 In Berkeley Inn, Inc. v. Centennial Ins. Co., 282 Pa.Super. 207, 422 A.2d 1078 (1980), a fire insurance company paid a conceded part of a loss into court pending trial on other aspects of the claim. The court held that interest at the legal rate accrued on the undisputed amount from the date the loss became payable until the day the sum was paid into court. On the other hand, interest on the disputed portion of the claim, for which the carrier had denied liability, was assessed at the legal rate from the date of loss. See also Gardner v. Freystown Mut. Fire Ins. Co., 350 Pa. 1, 37 A.2d 535 (1944) (interest awarded from date loss became payable); Samuels v. California Ins. Co., 192 Pa.Super. 484, 162 A.2d 48 (1960) (awarding legal rate of interest from date of loss where insurance company denied all liability).
 
 
 39
 In Smith v. Fidelity Mut. Life Ins. Co., 247 Pa. 369, 93 A. 479 (1915), the state supreme court adopted the opinion of the trial judge, disallowing interest on the proceeds of a life insurance policy. The delay in payment in that case was caused by conflicting adverse claims. Because of jurisdictional obstacles, the company was not able to interplead the claimants who had filed suits in two separate jurisdictions. The court noted that the carrier was therefore not in default because it "never was able to safely pay either of them until [one of the claimants] agreed to join in the present suit." Id. at 373, 93 A. at 480.
 
 
 40
 In circumstances such as the ones present in Smith, that court's ruling may perhaps still be good law in Pennsylvania; however, we note that Smith antedated the Restatement of Contracts provision on interest, which the state supreme court has since adopted.
 
 
 41
 Although we have no clear Pennsylvania precedent to guide us, we gather from such cases as Berkeley Inn that, in general, interest at the legal rate is due on insurance proceeds from the time they become payable. To that extent, prejudgment interest in insurance claims does not differ from other contractual disputes.
 
 
 42
 There may be circumstances where the defendant is excused from the payment of interest, perhaps as in Smith when there is no way the carrier could discharge its obligation. It would seem that in such cases the award of interest may be a discretionary matter. When delay of payment is not the fault of either party, an award of interest is permissible on the ground that the plaintiff has lost the use of the fund, to which it was properly entitled, until judgment is entered. Penneys v. Pennsylvania R.R. Co., 408 Pa. 276, 183 A.2d 544 (1962).
 
 
 43
 In the case at hand, the delay in resolving the identity of the rightful payees was the result of a long, drawn out criminal proceeding, a circumstance which cannot be attributed either to the insurance company or to the contingent beneficiaries. Although the company argues that it should be relieved from the payment of interest because the bank acquiesced in the decision to hold the proceeds, the record provides equal support for the position that the bank did so on the assumption that the money was being held at interest. It is pertinent that the insurance company had the option of interpleading all of the potential beneficiaries and then paying the fund into court. However, we cannot overlook the fact that the beneficiaries also could have brought suit against the insurance company and thus precipitated payment into the court registry.
 
 
 44
 On balance, we cannot say that in these circumstances the insurance company should not be required to pay interest. The beneficiaries were denied the use of the money in the sense that it would have earned interest while in the court's registry. The rate of interest allowable, however, is fixed by state statute at 6%. Pa.Stat.Ann. tit. 41, Sec. 202 (Purdon 1985). Because, as we noted earlier, this case is purely one at law and not in equity, the rate of interest is that provided by the statute.[1]
 
 
 45
 We are not persuaded by the company's argument that interest should be disallowed on the additional amount of the proceeds attributable to commissions. Although that sum had not been presented to the company in Jill DeJohn's 1976 claim, the money was in fact due on the policies. The beneficiaries lost the use of the money, and therefore, as we read the Pennsylvania decisional law, they are entitled to the interest. Palmgreen v. Palmer's Garage, Inc., 383 Pa. 105, 117 A.2d 721 (1955).
 
 
 46
 The parties have not disputed the date, fixed by the district court, on which the proceeds became payable; hence, we will not disturb that finding.
 
 
 47
 Accordingly, the judgment of the district court will be affirmed, except insofar as it awarded prejudgment interest in excess of the legal rate of 6%. The case will be remanded for calculation of the prejudgment interest at the rate of 6% simple and modification of the judgments to that extent.
 
 
 
 [1]
 In cases from other jurisdictions which the beneficiaries have cited, even after finding a duty to interplead, the courts have awarded interest only at the legal rate. See United States v. McDonald Grain and Seed Co., 135 F.Supp. 854 (D.N.D.1955); Messinger v. New York Life Ins. Co., 20 Wash.App. 790, 581 P.2d 1381 (1978); Keyes Fibre Co. v. Merrill, Inc., 297 A.2d 87 (Me.1972). Although the practical result we reach will be the same as in those cases, we do not find that Pennsylvania law imposes a duty to interplead in the circumstances present here