NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

─────────────

No. 14-3511

─────────────

JANICE M. LEAMAN,

Appellant

v.

GREGG B. WOLFE

─────────────

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-13-cv-00975)
District Judge: Honorable Ronald L. Buckwalter

─────────────

Argued June 4, 2015

Before: AMBRO, VANASKIE, and SHWARTZ, Circuit Judges

(Opinion filed: October 6, 2015)

Benjamin A. Andersen, Esquire
David M. Burkholder, Esquire  (Argued)
Powell, Trachtman, Logan, Carrle & Lombardo
475 Allendale Road, Suite 200
King of Prussia, PA   19406

      Counsel for Appellant

Steven E. Wolfe, Esquire  (Argued)
295 Buck Road, Suite 202
Holland, PA   18966

      Counsel for Appellee

_____

OPINION[*]
_____

AMBRO, <u>Circuit Judge</u>

Plaintiff Janice Leaman claims that her former business partner, defendant Gregg Wolfe, breached the terms of their settlement agreement. The District Court granted summary judgment in Wolfe's favor on the ground that he substantially performed under the parties' contractual agreement. For the following reasons, we vacate and remand.

**I.**

In 2010 Leaman brought a state-court action against Wolfe in connection with the breakup of their business. After mediation, the parties signed a settlement agreement (the "Agreement"), under which Leaman promised not to compete with Wolfe during the payment period and to drop her lawsuit. In return, Wolfe executed a Judgment Note providing for a series of 31 installment payments (amounting to $475,000 over the course of four years) plus an additional $100,000 to be "waived . . . and not . . . due and owing . . . [u]pon Wolfe's timely payment of the . . . [31] installments." Should Wolfe miss any payment deadline, he had a 10-day cure period from the date Leaman notified him of the default. Finally, the Agreement "authoriz[ed] Leaman . . . [i]n the event of an uncured default . . . to file, execute and transfer to any jurisdiction a Judgment Note . . . in the amount of $100,000, plus the entirety of the then unpaid balance . . . and Leaman's attorneys' fees and costs for the filing of the Judgment Note."

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

From the very first April 2012 payment, Leaman and Wolfe fell into a predictable pattern of behavior: Wolfe would fail to make a timely payment, Leaman would send him a notice of default by overnight mail, and Wolfe would pay on the last possible day that he could without overstepping the 10-day cure period. While Wolfe's failure to remit timely payment frustrated Leaman, her hands were tied given that Wolfe always managed to cover his default within 10 days of receiving notice.

After Wolfe failed yet again to remit timely payment in December 2012, however, things began to go more awry. Six days after Leaman sent him the notice of default, Wolfe's son passed away. When Wolfe informed Leaman another nine days later that, because of his son's passing, he would be unable to send the check until January 1, 2013, she warned that the 10-day cure period had passed and "if payment [was] not received by . . . December 27," she would "exercise [her] rights under . . . the Settlement Agreement." Wolfe complied with that demand.

The final straw came in February 2013 when Leaman for a second time did not receive payment within the 10-day cure period, though this time through no fault of Wolfe but rather by that of UPS, which had misplaced the package containing the check. With Wolfe ostensibly unaware of the check's non-arrival, Leaman filed this action in the Eastern District of Pennsylvania and obtained judgment against Wolfe for $390,450.

Upon learning of the judgment and nondelivered check, Wolfe promptly voided that check and hand delivered a new check to Leaman. He then moved to strike and reopen the confessed judgment in March 2013. The District Court granted summary judgment in Wolfe's favor, holding that the untimeliness of the two payments was not a

3

material breach and Wolfe had substantially performed his obligations under the Agreement. This appeal followed.

## II.

We have plenary review over the District Court's grant of summary judgment. *See Atkinson v. LaFayette College*, 460 F.3d 447, 451 (3d Cir. 2006). Summary judgment should be granted only if the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any contested facts will be resolved in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.

We first address whether Wolfe is entitled to summary judgment because he substantially performed under the Agreement. Under Pennsylvania law, substantial performance is an equitable doctrine, which applies "[w]hen a party has honestly and faithfully performed all material elements of its obligations under a contract, but has failed to fulfill certain technical obligations, causing no serious detriment to the injured party." *Barraclough v. Atl. Refining Co.*, 326 A.2d 477, 480 (Pa. Super. Ct. 1974).

While the parties vigorously dispute whether the elements of this doctrine are met, the issue matters little to the ultimate resolution of the case. This is because substantial performance is not a defense in a suit against a party for damages. 3A Arthur Linton Corbin, *Corbin on Contracts* § 702 (Joseph M. Perillo ed., 1993); *see also Riesett v. W.B. Doner & Co.*, 293 F.3d 164, 174 (4th Cir. 2002) ("Although the doctrine of substantial performance . . . forbid[s] a promisee from walking away from a contract and refusing to

4

perform his reciprocal contractual duties because of a minor breach by the promisor, it does not mean that a promisor who 'substantially performed' can avoid a lawsuit for damages by the promisee . . . ." (footnote omitted)); *Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1271 (Pa. Super. Ct. 2012) (analyzing whether breach was so substantial that "an injured party [may] regard[] the whole transaction as at an end"); *Exton Drive-In, Inc. v. Home Indem. Co.*, 436 Pa. 480, 490-91 (Pa. 1969) (holding that breach of time-is-of-the essence clause in construction contract was not material and plaintiff was therefore only entitled to damages, not suspension of performance); *In re Wolfe*, 378 B.R. 96, 105 (W.D. Br. Nov. 6, 2007) ("If a party to a contract fails to perform its obligations and its breach amounts to an immaterial failure, that party still may recover in an action on the contract."). The District Court thus erred in granting Wolfe summary judgment on this ground.

That Leaman "is entitled to some damages," however, "does not mean that we [are] compelled to find that [she] is entitled to all the damages which [she] s[eeks]." *Deek Invs., L.P. v. Murray*, No. 91-09071, 2005 WL 4979922, at *1 (Pa. Ct. Com. Pl. June 20, 2005). Whether Wolfe is entitled to the additional $100,000 payment contemplated by the Agreement in the event of an uncured default turns on whether this contractual "term fix[es] unreasonably large liquidated damages" and therefore "is unenforceable on grounds of public policy as a penalty." *Pantuso Motors, Inc. v. Corestates Bank, N.A.*, 798 A.2d 1277, 1282 (Pa. 2002) (quoting *Restatement (Second) of Contracts* § 356(1) (1981)). In Pennsylvania this is a question of law for the court. *See Lichetti v. Conway*, 44 Pa. Super. 71, 73 (1910).

5

To determine whether the contract's damages provision operates as a penalty, we must consider two factors. First, "[t]he greater the difficulty either of proving that loss has occurred or of establishing its amount with the requisite certainty, the easier it is to show that the amount fixed is reasonable." *Restatement (Second) of Contracts* § 356 cmt. b. (1981) (citation omitted); *see also Phila. Dairy Prods. Co. v. Polin*, 23 A.2d 221, 223 (Pa. Super. Ct. 1941). Here, actual damages arising from an untimely payment typically can be easily measured in terms of the prevailing interest rate. *See, e.g.*, *Checkers Eight Ltd. P'ship v. Hawkins*, 241 F.3d 558, 562 (7th Cir. 2001); *Highgate Assocs., Ltd. v. Merryfield*, 597 A.2d 1280, 1283 (Vt. 1991). This factor therefore support's Wolfe's position.

The second factor to consider is "the anticipated or actual loss caused by the breach." *Restatement (Second) of Contracts* § 356 cmt. b (1981). We are more likely to find a fixed measure of damages enforceable "to the extent that it approximates the actual loss that has resulted from the particular breach." *Id.* Here, a $100,000 charge in the event of an untimely payment is extravagant and disproportionate to any reasonable estimate of damages accrued using the applicable interest rate. Because this factor also weighs in Wolfe's favor, we have no trouble concluding that the liquidated-damages provision is an unenforceable penalty.

Finally, it makes no difference to our analysis that the penalty is couched as a discount for timely performance rather than a fee for late performance. As the *Restatement (Second) of Contracts* § 356 cmt. c. (1981) notes,

6

> [s]ometimes parties attempt to disguise a provision for a penalty by using language . . . that purports to offer a discount for prompt performance . . . . Although the parties may in good faith . . . fix discounts or valuations, a court will look to the substance of the agreement to determine . . . whether the parties have attempted to disguise a provision for a penalty that is unenforceable . . . .

*See also*, *e.g.*, 14 Richard A. Lord, *Williston on Contracts* § 42:11 (4th ed. 1997) ("[T]he presence of a sizable discount for the prompt payment of a sum purportedly due from the promisor may in reality disguise a penalty for a late payment.").

Notwithstanding our holding that the $100,000 contractual penalty for Wolfe's two untimely payments is unenforceable, Leaman is entitled to those damages that will "put [her] in the position . . . she would have been in but for the breach." *Empire Props., Inc. v. Equireal, Inc.*, 674 A.2d 297, 304 (Pa. Super. Ct. 1996). On remand, the District Court therefore should calculate a reasonable estimate of damages based on the applicable interest rate. As contemplated by the Agreement, Leaman is also entitled to what the District Court deems to be a reasonable attorneys' fee. *See, e.g.*, *Deek*, 2005 WL 4979922, at *1 (noting that the plaintiff was entitled to "attorneys' fees incurred by plaintiff in pursuit of its payment").

\*       \*       \*       \*       \*

In sum, although Wolfe was not entitled to summary judgment on substantial-performance grounds, we agree with him that the Agreement's $100,000 liquidated-damages provision is an unenforceable penalty. We thus vacate the opinion of the District Court and remand for it to consider the appropriate measure of damages and other aspects of Leaman's claim that remain in dispute.

7