NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 17-1467 & 17-1855
_____

JANICE M. LEAMAN,
　　　　　　　　　Appellant in 17-1855

v.

GREGG B. WOLFE,
　　　　　　　　　Appellant in 17-1467
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-13-cv-00975)
District Judge: Honorable Joy Flowers Conti
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 8, 2017

Before: SMITH, *Chief Judge*, HARDIMAN, *Circuit Judge*, and
BRANN, *District Judge*.[*]

(Opinion Filed: November 17, 2017)
_____

OPINION[**]
_____

[*] The Honorable Matthew W. Brann, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

This dispute between former business partners Janice Leaman and Gregg Wolfe comes to us for the second time. After this Court held that Wolfe had breached his 2012 settlement agreement with Leaman, the case was remanded to the United States District Court for the Eastern District of Pennsylvania to assess damages and attorney's fees. *Leaman v. Wolfe*, 629 F. App'x 280 (3d Cir. 2015). The District Court awarded Leaman $38,873.32, which included $10,523.97 for prejudgment interest and $28,349.35 for attorney's fees.

Wolfe now appeals the District Court's judgment, claiming the award is too high, while Leaman has filed a cross-appeal claiming the award is too low. Because we agree with the District Court in all respects, we will affirm.

## I[1]

## A

We begin with the District Court's assessment of prejudgment interest. The Court's award of $10,523.97 was based on its conclusion that Leaman was entitled to enforce an acceleration clause in the settlement agreement after Wolfe defaulted on his February 2013 payment. Although the Court found Wolfe's equitable arguments in support of his late payment "compelling," it held that the assessment of interest was a

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

2

matter of legal right, not a matter of discretion. *Leaman v. Wolfe*, 2017 WL 528280, at \*8 (E.D. Pa. Feb. 9, 2017).

The District Court's legal analysis was sound. In breach of contract cases arising under Pennsylvania law, "interest is allowable at the legal rate from the time payment is withheld after it has become the duty of the debtor to make such payment." *Benefit Tr. Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*, 776 F.2d 1174, 1178 (3d Cir. 1985) (internal quotation marks and alteration removed in original) (quoting *Palmgreen v. Palmer's Garage, Inc.*, 117 A.2d 721, 722 (Pa. 1955)); *see also Cresci Constr. Servs., Inc. v. Martin*, 64 A.3d 254, 259 (Pa. Super. Ct. 2013). Assessment of interest "is a legal right 'which arises upon breach or discontinuance of the contract provided the damages are then ascertainable by computation and even though a *bona fide* dispute exists as to the amount of the indebtedness.'" *Benefit Tr. Life Ins. Co.*, 776 F.2d at 1178 (quoting *Palmer's Garage*, 117 A.2d at 722); *see also Cresci*, 64 A.3d at 259 ("Recovery of prejudgment interest under this standard is a matter of law."). Prejudgment interest is not punitive; it merely compensates the nondefaulting party for the loss of her money. *Benefit Tr. Life Ins. Co.*, 776 F.2d at 1178 (citing RESTATEMENT (SECOND) OF CONTRACTS § 354 (Am. Law Inst. 1981)).

As for the amount of interest due, Wolfe claims that he owes only $26.65, which is the accrued interest for 13 days at 6 percent on the single late payment in question of $12,500. Leaman counters that, since she exercised her right to accelerate all payments due after Wolfe defaulted, Wolfe became liable for interest on the entire amount, as reduced in time by each of Wolfe's monthly payments. *See* 41 Pa. Cons. Stat. § 202. The

3

District Court accepted Leaman's argument in this regard, and we find no error in its decision. Wolfe's February 2013 default triggered the acceleration clause, which enabled Leaman to sue for "the entirety of the then unpaid balance of the Settlement Amount." App. 97. Leaman exercised that right, which triggered Wolfe's duty to pay the full amount. That duty was not vitiated by Wolfe's decision to continue making monthly payments, nor by Leaman's decision to mitigate her damages by accepting those payments. *See Cresci*, 64 A.3d at 259 (noting "interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled" (quoting RESTATEMENT (SECOND) OF CONTRACTS § 354)). Accordingly, the District Court did not err in awarding Leaman prejudgment interest in the amount of $10,523.97.[2]

## B

We next turn to the parties' challenges to the District Court's award of attorney's fees. Leaman asked the District Court to award her $70,505.92, which she claimed was the full amount under the lodestar method. Wolfe countered that Leaman was entitled to just $265.13, which represented the time he believed was necessary to prepare Leaman's complaint in confession of judgment. The District Court rejected Wolfe's argument,

---

[2] On appeal, Wolfe repeatedly references a letter in which he expresses his intent to continue making monthly payments as support for his argument that Leaman waived her right to accelerated interest. This document was not before the District Court on summary judgment, nor was it properly presented via a motion for reconsideration. Instead, it was attached to Wolfe's opposition to *Leaman's* motion for reconsideration, which only questioned the District Court's award of attorney's fees. Accordingly, it is not subject to review on appeal and, even if it were, it would fall well short of evidencing a waiver.

finding Leaman to be a prevailing party because she persuaded a panel of this Court that she was entitled to interest and attorney's fees. *Leaman*, 2017 WL 528280, at \*6. Because the District Court was plainly correct in this regard, we summarily reject Wolfe's argument.

Although the District Court agreed with Leaman that she was a prevailing party entitled to attorney's fees, the Court disagreed that $70,505.92 was the proper amount. For starters, the Court agreed with Wolfe that Leaman's first counsel—who happened to be her husband, William Einhorn—did not justify his claimed rate of $400 per hour. Instead, the Court found that the appropriate rate for Einhorn was $203.95, which was the average rate of Leaman's second law firm (Powell, Trachtman, Logan, Carrle & Lombardo). When Einhorn's revised fee amount was added to the reasonable fees of the Powell firm, the lodestar was $56,698.69. Because both sides achieved some success in the litigation, however, the District Court reduced the lodestar by 50 percent to $28,349.35.

Leaman insists the District Court erred when it reduced the lodestar amount, but we are unpersuaded. The District Court's decision in this regard was discretionary. *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990). We "may not upset a trial court's exercise of discretion on the basis of a visceral disagreement with the lower court's decision . . . [nor] where the trial court employs correct standards and procedures[] and makes findings of fact not clearly erroneous." *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (internal quotation marks and citation

omitted). Rather, we will defer where the District Court "applied the correct criteria to the facts of the case." *Id.* (internal quotation marks and citation omitted).

After determining the lodestar, the District Court adjusted it based on its assessment of the degree to which Leaman succeeded in this litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Consistent with the Supreme Court's direction, the District Court determined whether Leaman's unsuccessful claims were "unrelated" to the successful claims and whether she "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* at 434. Finding the claims to be inextricably intertwined, the Court considered the significance of the overall relief Leaman obtained "in relation to the hours reasonably expended on the litigation." *Id.* at 435.

The Court did not abuse its discretion in performing this task. *See Mancini v. Northampton Cty.*, 836 F.3d 308, 321 (3d Cir. 2016). In determining the relative success of the parties, the Court noted that Leaman obtained a finding that Wolfe breached the contract, successfully defeated his "substantial performance" defense, obtained an order granting summary judgment against a counterclaim for breach of contract, and was awarded accelerated interest. For his part, Wolfe successfully reopened the confessed judgment and extricated himself from the $100,000 liquidated damages provision. The Court did not factor the $212,500 principal sum into its analysis, since Wolfe's obligation to pay this amount "was never in dispute." *Leaman*, 2017 WL 528280, at *8. Thus, the Court viewed the $100,000 liquidated damages provision—on which Wolfe prevailed— as "the largest sum in dispute," and it then compared this amount with the $10,523.39

6

Leaman earned in accelerated interest. *Id.* Based on these factors, as well as the fact that both parties were responsible for the contentious litigation, the Court reduced the award by 50 percent.

Leaman takes issue with the District Court's analysis, arguing her principal claim was for breach of contract, which included successful recovery of the $212,500 principal. Although Leaman's argument is not without force, the District Court's contrary decision was far from an abuse of discretion. Because the Court "applied the correct criteria to the facts of the case," we will defer to its decision. *Washington*, 89 F.3d at 1035; *see also Hensley*, 461 U.S. at 437 (noting that "the district court has discretion in determining the amount of a fee award" because of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters").

The same holds true for the District Court's decision not to consider Leaman's three additional months of invoices attached to her motion for reconsideration. Leaman did make the Court aware of her desire to provide additional timesheets in a footnote in her summary judgment motion. But in the intervening two months between submission of the motion and the Court's decision, Leaman never attempted to supplement the record or explain why she could not have done so. Accordingly, we agree with the District Court that these timesheets did not provide a legitimate basis for Leaman's motion for reconsideration. *See Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (noting that a motion for reconsideration under Rule 59 of the Federal Rules of Civil Procedure "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the

availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice" (citation omitted)); *see also Bailey v. United Airlines*, 279 F.3d 194, 201 (3d Cir. 2002) ("A district court may properly refuse to consider evidence presented in a motion for reconsideration when the evidence was available prior to summary judgment." (citation omitted)).

## C

Finally, we agree with the District Court that Leaman's claim for consequential damages is without merit. Leaman's suggestion that she could not begin working as a court reporter until this Court determined Wolfe had breached the settlement agreement is mistaken. The settlement agreement rendered the noncompete provision null and void once Wolfe defaulted in February 2013. *See* App. 104 (adopting this interpretation in Leaman's notice of default). Accordingly, Leaman did not need a court determination to begin working.

## II

For the reasons stated, we will affirm the judgment of the District Court in all respects.